558 A.2d 399

James H. RUCKER et al.

v.

HARFORD COUNTY, Maryland et al.

Misc. No. 18, Sept. Term, 1988.

Court of Appeals of Maryland.

June 6, 1989.

276

Carmen M. Shepard, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Carolyn A. Quattrocki, Stuart M. Nathan, Asst. Attys. Gen., all on brief), Baltimore, for appellants.

Jefferson L. Blomquist, Asst. County Atty. (Victor K. Butanis, County Atty., Jacqueline A. Moore, Asst. County Atty., all on brief), Bel Air, for appellees.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

ELDRIDGE, Judge.

The United States District Court for the District of Maryland, pursuant to the Uniform Certification of Questions of Law Act, Maryland Code (1974, 1984 Repl.Vol.), §§ 12–601 through 12–609 of the Courts and Judicial Proceedings Article, has certified the following two questions to this Court:

"1.  Whether the Sheriff or Deputy Sheriffs of Harford County are employees of the State of Maryland or of Harford County?

"2. Whether Harford County or the State of Maryland is obligated to fund the expenses associated with claims for liability involving the Harford County Sheriff, the Deputy Sheriffs or the Sheriff's office, including the cost of liability insurance, the costs of defending suits brought against them and the payment of any settlements and judgment?"

The facts relevant to these questions were set forth in the Order of Certification. On July 28, 1987, an individual named Jerry Mace stole a car, drove through the Susquehanna River Bridge Toll Facility without paying the toll, and proceeded on Interstate 95 towards Edgewood, Maryland, at speeds in excess of 110 miles per hour. Maryland State Police pursued Mace on Interstate 95, and Harford County Sheriff's Deputies joined the chase when Mace exited onto Maryland Route 24. Mace then drove off the road and into a cornfield. When Mace tried to escape from the cornfield, shots were fired, and David Rucker, a civilian bystander, was struck by a bullet.

David Rucker and his father filed the present action in the United States District Court for the District of Maryland. Named as defendants in the complaint, as amended, were Harford County, the "Harford County Sheriff's Department," each of the Deputy Sheriffs involved in the chase, the Superintendent of the Maryland State Police, and each of the State Police Troopers involved in the chase. The plaintiffs' action was based on common law negligence principles and claimed violations of constitutional rights under 42 U.S.C. § 1983.

The Certification Order stated that the Deputy Sheriffs "have been sued in their capacity as public officials, and have moved to dismiss the portion of the complaint that seeks recovery against them for the alleged violation of David Rucker's constitutional rights under 42 U.S.C. § 1983. The Deputy Sheriffs in this case assert that any suit against them in their official capacities is barred by the Eleventh Amendment because they are state employees or officials. This argument is premised on the as-

sumption that any judgment against them would 'expend itself on the public treasury or domain.' The State disputes this core assumption arguing that the County is responsible for any judgments rendered against the Deputy Sheriffs.

"Whether the Deputies are State or County employees may have other implications in this litigation."

The Order of Certification also included a stipulation of facts entered into by the several defendants.[1] The dispu-

---

1. The stipulation is as follows:

    "1. Pursuant to Courts and Judicial Proceedings Article, Annotated Code of Maryland, § 2–309, Harford County provides funding for the office of the Sheriff of Harford County. In addition, pursuant to Article 15A, §§ 35–39, Annotated Code of Maryland, Harford County receives grant monies from the State. Harford County is required to utilize these grant monies to assist in providing adequate police protection in the County. For Fiscal Year 1988, the County received $940,000 which constituted approximately 15.2% of the General Police portion of the Sheriff's budget from this continuing State grant. For Fiscal Year 1989, the County anticipates receipt of approximately $993,000 from the State.

    "2. Pursuant to Md.Ann.Code Art. 24, § 8–101, the Sheriff submits his budget in accordance with § 504 of the Harford County Charter.

    "3. The Sheriff and the Deputy Sheriffs are not part of the County merit system.

    "4. Deputy Sheriffs are not part of the State merit system.

    "5. The Sheriff devised the pay plan for Deputy Sheriffs who comprise all of the employees of the Sheriff's Office. Said pay plan locates all positions and classifications and covers all salaries including a provision for longevity payments and is separate and distinct from the County's pay and classification plan. The Sheriff's pay plan is submitted to the County Executive as part of the budgetary process.

    "6. The Sheriff hires, fires, trains and disciplines all Deputy Sheriffs. No other person participates in the decisional processes of hiring, firing, training or disciplining the Sheriff or a Deputy Sheriff, subject only to the requirements established by the Police Training Commission pursuant to § 4–201 of Article 41 of the Annotated Code of Maryland.

    "7. Harford County provides workers' compensation coverage for Deputy Sheriffs.

    "8. All vehicles utilized by deputy sheriffs are titled in the name 'Harford County Sheriff's Department.'

    "9. Up until fiscal year 1987, Harford County procured commercial liability insurance for the Sheriff's Office. Due to the rising

tants with regard to the status of the Harford County Sheriff and Deputy Sheriffs are all defendants. Harford County and the Deputy Sheriffs take the position that the Sheriff and Deputy Sheriffs are State employees. The State Police defendants, represented by the Maryland Attorney General, take the position that the Sheriff and Deputy Sheriffs are county employees. The same parties differ with respect to the second certified question relating to financial responsibility for liability claims.

## I.

The first certified question broadly asks whether the Sheriff or Deputy Sheriffs of Harford County are State or county employees. Preliminarily, we wish to emphasize that we answer this question as a matter of Maryland law only. Whether the Harford County Sheriff's Office is to be regarded as a State or local government agency, and whether the Sheriff and Deputy Sheriffs are to be regarded as State or local government employees, for purposes of the Eleventh Amendment or 42 U.S.C. § 1983, are federal law

---

cost of insurance, the County elected to become self-insured. Prior thereto, all costs, exclusive of deductibles, associated with defending the Sheriff and his deputies in law suits and payment of any adverse judgments was borne by the insurance carrier.

"10. The Sheriff has traditionally been represented by the Attorney General and looks first to the Attorney General for representation and advice.

"11. The County has on one occasion paid a nominal settlement on behalf of the Sheriff's Office (including the Sheriff or his deputies) but has never paid any adverse judgments rendered against the Sheriff's Office (including the Sheriff or his deputies).

"12. The Board of Public Works has never paid for any judgments or settlements on behalf of the Sheriff's office (including the Sheriff or his deputies).

"13. In Harford County, the Sheriff and State Police are the primary law enforcement agencies. The County has not established a County police force.

"14. Section 9–8 of the Harford County Code created the Harford County Police Commission as an advisory commission, whose members are 'the Sheriff of Harford County, who shall be Chairman of the Commission, the Chiefs of Police of the City of Havre de Grace and the Towns of Aberdeen and Bel Air, respectively, and the commanding officer of the Bel Air Barracks or his designee.'"

issues which are not before this Court in a proceeding under the Certification of Questions of Law Act. *Widgeon v. Eastern Shore Hosp. Center,* 300 Md. 520, 536–537, 479 A.2d 921 (1984). *See Clea v. City of Baltimore,* 312 Md. 662, 670 n. 5, 541 A.2d 1303, 1306–1307 n. 5 (1988) ("with regard to federal law liability under 42 U.S.C. § 1983, the state law classification of the [agency] ... would not be decisive").

In response to the first certified question, we conclude that, as a matter of Maryland law, the Sheriff and Deputy Sheriffs of Harford County are officials and/or employees of the State of Maryland rather than of Harford County.[2] The role of a sheriff as a State constitutional officer whose duties are subject to control by the General Assembly leads us to the conclusion that sheriffs are State rather than local government employees. Because a deputy sheriff functions as the alter ego of the sheriff, and exercises the same authority, we reach the same conclusion with respect to deputy sheriffs.

This Court in *Talbot County v. Carroll,* 172 Md. 386, 387, 191 A. 574 (1937), flatly took the position that sheriffs are State rather than county officials. In that case we held that a county government was not required to reimburse a sheriff for premiums paid for his official bond. In reaching

---

**2.** The certified question asks us whether the Sheriff or Deputy Sheriffs of Harford County are "employees" of the State of Maryland or of Harford County. Strictly speaking, sheriffs and deputies might be categorized as public officials rather than employees. A number of this Court's decisions have drawn distinctions between officers or officials and employees. *See, e.g., Duncan v. Koustenis,* 260 Md. 98, 271 A.2d 547 (1970); *Howard County Metropolitan Commission v. Westphal,* 232 Md. 334, 193 A.2d 56 (1963); *Gary v. Board of Trustees,* 223 Md. 446, 165 A.2d 475 (1960). In *Duncan v. Koustenis, supra,* 260 Md. at 106, 271 A.2d at 551, the Court noted that public officials include those who "can be called on to exercise police powers as conservators of the peace." This Court has held that sheriffs are public officials. *Cocking v. Wade,* 87 Md. 529, 542–544, 40 A. 104 (1898). Deputy sheriffs arguably qualify as public officials in that they "can be called on to exercise police powers as conservators of the peace." The certified question, however, is not concerned with this distinction.

that result we dealt with a provision of the Maryland Code which, as described by the Court, stated that

> "when any county treasurer, tax collector, county commissioner, or any officer coming within the common meaning of a county official shall furnish an official bond ... the county may pay the premium ... from the general fund of the county 'provided, however, that when any such bond is given by a clerk of court, register of wills, state's attorney or sheriff, the payment of the premium on said bond shall be charged as an expense of any such officer.' " (172 Md. at 387, 191 A. at 575).

In construing this language, we held as follows (172 Md. at 387, 191 A. at 575, emphasis added):

> "The two parts of the statute, the first clause and the proviso, are distinct in respect to officials and the public funds from which the premiums may be paid. County officials are specified in the first clause. *Those in the second are state officials. A sheriff, 'as conservator of the peace in his county or bailiwick, is the representative of the king, or sovereign power of the State for that purpose.' South v. Maryland,* 18 How. 396, 402, 15 L.Ed. 433 [1856]."

The Attorney General attempts to distinguish *Talbot County v. Carroll* by pointing out that the scheme for paying the salary and expenses of sheriffs has changed since the time of that decision. At that time the sheriffs' offices were funded through fees collected by the sheriffs. Since 1945, the salaries and many of the expenses of the sheriffs' offices have been paid directly by the counties. Art. IV, § 44, of the Maryland Constitution; Code (1939, 1947 Cum.Supp.), Art. 87, § 37B.

■ Under this Court's decisions, however, the source of an agency's or official's funding is not dispositive of the agency's or official's status as a State government entity or

local government entity.[3] In *Valle v. Pressman*, 229 Md. 591, 185 A.2d 368 (1962), this Court was concerned with whether state's attorneys are State or local officers. State's attorneys, like sheriffs, operate within and are compensated by a particular county or Baltimore City. *See* Code (1957, 1987 Repl.Vol.), Art. 10, § 40. The Court unequivocally held that a state's attorney was a State officer, saying (229 Md. at 600, 185 A.2d at 374):

"The office is created by the Constitution.... Removal [of a state's attorney from office is] a State and not a local function. The naming of a successor to a State's Attorney who dies or resigns during his term is confided to the Judges of the political subdivision in which he was serving, and Maryland Judges are Officers of the State."

In several cases it has been held that particular agencies or officials are State agencies or officials despite the fact that local governments are wholly or substantially responsible for funding those agencies or officials. *See, e.g., Clea v. City of Baltimore, supra,* 312 Md. at 668, 541 A.2d at 1306 ("Unlike other municipal or county police departments which are agencies of the municipality or county ..., the Baltimore City Police Department is a State agency"); *Bd. of Educ. v. P.G. Co. Educators' Ass'n,* 309 Md. 85, 95 n. 3, 522 A.2d 931 (1987) ("County boards of education are, of course, State agencies and not agencies of the county

---

3. This is consistent with our decision regarding the employer/employee relationship in other contexts. Thus the Court has held that the payment of wages is but one factor in determining whether an employer/employee relationship exists. We stated in *Mackall v. Zayre Corp.,* 293 Md. 221, 230, 443 A.2d 98 (1982):

"In determining whether the employer-employee relationship exists, this Court has established at least five criteria. These include (1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer. The decisive test in determining whether the relation of employer and employee exists is whether the employer has the right to control and direct the employee in the performance of the work and in the manner in which the work is to be done."

governments"); *Md.–Nat'l Cap. P. & P. Comm'n v. Kranz,* 308 Md. 618, 622–626, 521 A.2d 729 (1987) (Commission a State agency for tort liability purposes); *Katz v. Washington Sub. San. Comm'n,* 284 Md. 503, 397 A.2d 1027 (1979); *Board v. John K. Ruff,* 278 Md. 580, 366 A.2d 360 (1976). *See also County Council v. Montgomery Ass'n,* 274 Md. 52, 62–63, 333 A.2d 596 (1975), and 58 Op. Atty. Gen. 285 (election boards); *Nesbitt v. Fallon,* 203 Md. 534, 545, 102 A.2d 284 (1954), and 58 Op. Atty. Gen. 3 (1973) (liquor boards); Art. IV, § 40, of the Maryland Constitution (judges of the orphans' courts).

Many other considerations have been more important than funding in determining the status of a governmental agency or official as State or local. In *O & B Inc. v. Md–Nat'l Cap. P. & P.,* 279 Md. 459, 462, 369 A.2d 553 (1977), we stated:

> "There is no single test for determining whether a governmental body is an agency of the state.... Rather it is necessary to examine the relationship between the state and the governmental entity to determine its status as either a state agency or a county or municipal agency."

In *Board v. John K. Ruff, supra,* we held that despite a certain amount of county control over the activities of community colleges, and the fact that the State funded only a portion of the costs, the boards of trustees of community colleges were State agencies. The Court relied on the fact that community colleges were ultimately "created and controlled by the State" and that the Board of Trustees' powers "flowed from public general laws." 278 Md. at 587, 366 A.2d at 364.

Similarly in *O & B Inc., supra,* the Court held that the Maryland–National Capital Park and Planning Commission, a bi-county agency created by the General Assembly, was a state agency for purposes of tort liability. The Court stated (279 Md. at 464–465, 369 A.2d at 556):

"Like community colleges, the Commission functions only on a regional basis and is subject to some control by the counties within the region . . .

    *     *     *     *     *     *

"Despite this degree of local control, the Commission, like the community colleges, was created by the State and not by the action of . . . Counties. The powers and duties of the Commission are set forth in public general laws, and the counties may exercise only that control over the Commission which is expressly permitted by the General Assembly."

These and other cases teach that the question of whether sheriffs and their deputies are State or local officials primarily depends on whether the creation and ultimate control of the offices of sheriff and deputy lie with the State or with local government.

The common law office of sheriff is of ancient origin, and the elective office of sheriff has been provided for in Maryland's Constitutions since 1776. Under the current Constitution, Art. IV, § 44, mandates the election of a sheriff in each county and in Baltimore City. Section 44 establishes the term of office for sheriff and imposes age and residency requirements on those seeking the office. Furthermore, § 44 provides that the Governor shall appoint a replacement if a sheriff dies, resigns, or cannot serve out his term.

These constitutional aspects of the sheriff's office are markedly similar to those of the office of state's attorney discussed in *Valle v. Pressman, supra.*[4] Indeed, the Attorney General has, in the past, applied the language of *Valle*

---

4. In *Valle*, 229 Md. at 600, 185 A.2d at 374, the Court noted that, under Art. V, § 7 of the Maryland Constitution, a state's attorney was subject to removal from office "by a vote of two-thirds of the Senate, on the recommendation of the Attorney General." The Constitution contains no such explicit provision for the removal of a sheriff. The Attorney General has, however, indicated that a sheriff would be subject to impeachment under Article III, § 26, of the Constitution. 58 Op.Atty. Gen. 671, 706 (1973).

to the office of sheriff and written (50 Op. Atty. Gen. 346, 347 (1965)):

> "Article IV, Section 44, of the Maryland Constitution provides for election to the office of sheriff and, in case of a vacancy in such office, for the appointment of a successor by the Governor. It would thus appear that the office of sheriff is clearly analogous to that of State's Attorney in that it is provided for by the State Constitution, and, notwithstanding the fact that the electorate is not State-wide, the control of the office retained by the Governor, i.e. that he is permitted to fill vacancies in the office justifies our conclusion that a sheriff is a State official."

See also 6 Op. Atty. Gen. 427, 430 (1921). As with the state's attorney in *Valle*, the constitutional status of the sheriff is a particularly important factor leading to the conclusion that a sheriff is a State rather than a local government official.

Another factor leading to this conclusion is that the power and authority exercised by sheriffs is controlled by State law. Section 2–309(a) of the Courts and Judicial Proceedings Article provides (emphasis added):

> "The sheriff of a county and his deputies shall receive the annual salaries provided by this section for performing *the duties required of them by the Constitution and the laws of this State.*"

This Court has frequently pointed out that the authority, duties and functions of a sheriff are controlled by the common law and the General Assembly. Thus, in *Mayor & City Council of Baltimore v. State*, 15 Md. 376, 488 (1860) (concurring opinion), Chief Judge Le Grand stated in language that has often been repeated:

> "[T]he Constitution ... does not specify or describe the powers and duties of the sheriff. These are left to the common law and the Acts of Assembly.... There is nothing to prohibit the Legislature from adding to or diminishing his duties, provided those added be not in conflict with his office as sheriff."

*See e.g., Soper v. Montgomery County,* 294 Md. 331, 337, 449 A.2d 1158 (1982); *Green v. State,* 122 Md. 288, 294–296, 89 A. 608 (1914); *Beasly v. Ridout,* 94 Md. 641, 656, 52 A. 61 (1902). *See also Crosse v. Board of Elections,* 243 Md. 555, 561, 221 A.2d 431 (1966). In home rule counties like Harford, the General Assembly exercises no such direct control over the powers and duties of officers created by county charters.

Not only are the duties of sheriffs subject to modification by the General Assembly, but some of the duties prescribed for sheriffs are statewide in scope rather than confined to the locality in which they generally operate. Under § 2–301 of the Courts and Judicial Proceedings Article, a sheriff is empowered to "serve papers in a county other than the county of which he is sheriff." Code (1957, 1988 Repl.Vol.), Art. 75, § 85, provides that State courts may issue process against individuals "directed to the sheriff of the county where such person may reside, and the sheriff shall serve and return such process as if issued by a court of his county." Also, § 2–404 of the Courts and Judicial Proceedings Article provides that the State's appellate courts "may direct the sheriff to attend the court or perform services for the court." More generally, as stated in *Green v. State, supra,* 122 Md. at 295–296, 89 A. at 610:

"It has never been disputed, in this State, that it was the official duty of the sheriff, to attend in person, or by deputy, the sessions of the ... courts....

"It is difficult to see how the work of the courts could be properly and expeditiously conducted in the absence of an officer, clothed with the power and authority of the sheriff.

"It was the duty of the sheriff at common law to attend the courts, in person, or by deputy. *Blackstone's Commentaries,* Vol. 1, star page 345, and it has always been regarded as one of the official duties of his office to so attend the sessions of the ... courts of the State."

The control of the functions of the sheriffs by State common law, by the General Assembly and by the judiciary,

coupled with the statewide nature of many of the sheriffs' duties, strongly reinforce the view that sheriffs are State rather than local government officials.

There is a degree of local control over the operation of the sheriff's office in each county, which results from the provision for local funding. A sheriff is required by an act of the General Assembly to submit his budget to the county in compliance with the county's budget procedure. Code (1957, 1978 Repl.Vol., 1988 Cum.Supp.), Art. 24, § 8–101. If a county decides to create its own police department or to use the Maryland State Police, under the "resident trooper" program,[5] as the principal law enforcement entity in the county, the county officials undoubtedly will not fund the sheriff's office to the same extent that the sheriff's office would be funded if it were the primary law enforcement agency in the county.[6] As a practical matter, this will affect the law enforcement functions of the sheriff's office. *See Soper v. Montgomery County, supra,* 294 Md. at 338–345, 449 A.2d at 1162–1165. Nevertheless, county officials may not directly abridge the functions and duties of a sheriff under the common law and enactments of the General Assembly. As our cases make clear, only the General Assembly can change the duties and functions of the sheriffs.[7]

---

5. Code (1957, 1985 Repl.Vol.), Art. 88B, § 63.

6. It is noteworthy that, in those counties which use the Maryland State Police to carry out law enforcement duties in the county under Art. 88B, § 63, the county pays the bulk of the salary and expenses of the state troopers involved. Yet no one has ever suggested that those payments by the county transform the State Police troopers into county employees.

7. The Attorney General has concluded that, because county officials cannot change the duties and functions of the sheriff, the county officials have an obligation of providing the necessary funds to allow the sheriff adequately to perform his duties. *See* 60 Op.Atty.Gen. 647, 657 (1975), where it is stated (emphasis added):

"We are aware that the duties of the sheriff's office are constitutionally set by the common law and by statute, but that the salaries of the sheriff's office are paid for locally by the county commission-

Various enactments of the General Assembly confirm the view that, under Maryland law, sheriffs are State officials instead of local government officials. For example, Maryland's Public Ethics Law, Code (1957, 1986 Repl.Vol.), Art. 40A, § 1–201(gg), defines a "State official" as including "a person holding office as State's Attorney, clerk of the circuit court for each county, register of wills, and sheriff." The Local Government Tort Claims Act, Code (1974, 1984 Repl.Vol., 1988 Cum.Supp.), §§ 5–401 through 5–404 of the Courts and Judicial Proceedings Article, discussed in Part II of this opinion, *infra,* does not include sheriffs or sheriffs' offices within the definition of "local government." A perusal of the index to the Maryland Code, under "Sheriffs," discloses a multitude of State statutes regulating every aspect of the sheriffs' operations in the same way that other State officials or employees are regulated.

For the foregoing reasons we conclude that, under Maryland law, sheriffs are State officials and/or employees. This conclusion does not mean that, for some purposes and in some contexts, a sheriff may not be treated as a local government employee. In addition to matters relating to the local funding of sheriffs' offices, a sheriff may be given certain benefits given to local government employees. For example, a sheriff may be included under a county-estab-

---

ers of Washington County. It seems to us that such a situation necessarily mandates a good faith working relationship between the two offices ... [requiring] the sheriff and the county commissioners to make honest attempts to resolve their differences through negotiation and compromise. *Since the duties of the sheriff clearly cannot be abridged by action of the county commissioners, we believe that the county has an implied obligation to provide the sheriff, within reasonable limits, with the necessary funds to adequately discharge his constitutional and statutory obligations.* Conversely, we believe that the sheriff has an obligation to realistically assess the needs of his office and to request only such additional funding for personnel as he deems absolutely necessary for the adequate performance of his functions. In the present state of the law, an impasse cannot be resolved unless the sheriff and the county commissioners reach a mutual agreement. Appropriate remedial legislation is the prerogative of the General Assembly."

lished pension plan. *See, e.g.,* Code (1957, 1981 Repl.Vol.), Art. 25, § 3(g-1).

Having determined that a sheriff is a State rather than a local official, we must decide whether the same is true of deputy sheriffs. There is a significant difference between the two. The office of sheriff is an elective office created by the Constitution, while the office of deputy is appointive and is not established in the Constitution. *See Turner v. Holtzman,* 54 Md. 148, 159 (1880). Despite this difference a deputy sheriff has generally been viewed as the alter ego of the sheriff. "In the eyes of the law the sheriff or constable and his deputy are one officer." 1 *Anderson on Sheriffs, Coroners, and Constables,* § 78 (1941). In *Myers v. Smith,* 27 Md. 91, 113 (1867), this Court pointed out that where a warrant is directed to a sheriff, "that officer may execute the warrant by his deputy, whose acts must be regarded as those of the sheriff himself." Similarly, in *Turner v. Holtzman, supra,* 54 Md. at 159, the Court said that "a deputy sheriff of Baltimore County ... posses[es] authority such as the sheriff himself could exercise." *See also, Soper v. Montgomery County, supra,* 294 Md. at 338, 449 A.2d at 1161-1162; *Ex Parte Estate of Bristor,* 115 Md. 614, 621, 81 A. 25 (1911).

Because a deputy performs the same duties as the sheriff and because those duties are prescribed by State law, it seems clear that deputy sheriffs are State rather than county employees. Additional support for this view stems from the fact that, at the same time the deputy sheriff enjoys the power and authority wielded by the sheriff, the deputy remains subject to the direction and control of the sheriff. Among the common-law powers and duties of a sheriff was the duty to appoint, direct, and remove deputies. *Anderson on Sheriffs, supra,* §§ 60, 85, 145. These common law duties have been regulated somewhat by the General Assembly. Thus, statutes prescribe the number of deputies a sheriff may hire (*e.g.,* § 2-309(n)(1) of the Courts and Judicial Proceedings Article), mandate the training deputies are to receive (Art. 41, § 4-201), and limit a sheriff's

power to fire a deputy at will (Art. 27, § 727(b)–§ 734D). *See also, Miner v. Novotny,* 304 Md. 164, 498 A.2d 269 (1985). Nevertheless, this regulation is by State laws and not local ordinances.[8]

We therefore conclude that deputies, like sheriffs, are State employees.[9]

## II.

We now address the second certified question: whether, under Maryland law, "Harford County or the State of Maryland is obligated to fund the expenses associated with claims for liability involving the Harford County Sheriff, the Deputy sheriffs or the Sheriff's Office, including the cost of liability insurance, the costs of defending suits brought against them and the payment of any settlements and judgments."

## A.

Of course, in the absence of statutory or contractual provisions to the contrary, a public or private entity is ordinarily not vicariously liable for, or obligated to pay expenses associated with, the tortious acts of those who are not its employees. *See, e.g., Brady v. Ralph Parsons Co.,* 308 Md. 486, 511–513, 520 A.2d 717 (1987); *Rowley v. City of Baltimore,* 305 Md. 456, 505 A.2d 494 (1986); *Cox v. Prince George's County,* 296 Md. 162, 165, 460 A.2d 1038

8. The basic authority of the sheriff to direct the activities of his deputies has been codified at § 2–309(z) of the Courts and Judicial Proceedings Article, which states that "[a] deputy sheriff shall perform the duties incidental to the office as are assigned to him by the sheriff." In a different context, the Attorney General has taken the position that individuals performing State functions and accountable to State officials are State employees. 58 Op.Atty.Gen. 3, 11 (1973).

9. Other jurisdictions have viewed their sheriffs and deputies as state officials. *See, e.g., Application of Combs,* 254 N.Y.S.2d 143, 145, 44 Misc.2d 467 (1964) (Sheriff is "historically ... considered a state officer"); *State of Missouri, ex rel. v. Finn,* 8 Mo.App. 341, 347 (1880) ("The sheriff of [a county] is a state officer"); *Andrews v. State,* 78 Ala. 483, 485 (1885) (Deputy was "officer of the State").

(1983). More specifically, counties and municipalities in Maryland are generally not liable under the doctrine of respondeat superior for the tortious acts of State officials or State employees acting in the scope of their employment. *Clea v. City of Baltimore, supra,* 312 Md. at 668–669, 541 A.2d at 1306, and cases there cited. In the recent *Clea* case, we stated (*ibid.*):

"[T]he Baltimore City Police Department is a state agency. Thus, as a matter of Maryland law, no liability ordinarily attaches to Baltimore City under the doctrine of respondeat superior for the torts of Baltimore City police officers acting within the scope of their employment."

Consequently, Harford County would ordinarily bear no common-law liability for the tortious acts of the Sheriff or deputy Sheriffs, who are State employees.

■ The General Assembly could, of course, by statute make counties or municipalities liable for the tortious acts of State employees. Thus, § 5–403 of the Local Government Tort Claims Act, *supra,* enacted in 1987, renders counties liable under certain circumstances for judgments against county employees and some state agency personnel. The Act requires localities to pay, up to a specified amount, judgments rendered against "local government" employees based on non-malicious tortious acts. Section 5–401(d) of the Act defines "local government" as follows:

"(d) ... 'Local government' means:

(1) A chartered county established under Article 25A of the Code;

(2) A code county established under Article 25B of the Code;

(3) A board of county commissioners established or operating under Article 25 of the Code;

(4) Baltimore City;

(5) A municipal corporation established or operating under Article 23A of the Code;

(6) The Maryland-National Capital Park and Planning Commission;

(7) The Washington Suburban Sanitary Commission;

(8) A community college or board of trustees for a community college established or operating under Title 16 of the Education Article;

(9) A county public library or board of trustees of a county public library established or operating under Title 23, Subtitle 3 of the Education Article;

(10) The Enoch Pratt Free Library or board of trustees of the Enoch Pratt Free Library;

(11) The Washington County Free Library or the board of trustees of the Washington County Free Library;

(12) A special taxing district;

(13) A nonprofit community service corporation incorporated under Maryland law that is authorized to collect charges or assessments; and

(14) Housing authorities created under Article 44A of the Code."

This definition specifically includes entities that had previously been held to be "State agencies" for purposes of tort liability and immunity from tort liability. *See Md.-Nat'l Cap. P. & P. Comm'n v. Kranz, supra,* 308 Md. at 622–626, 521 A.2d at 731–733; *Katz v. Washington Suburban Sanitary Commission, supra,* 284 Md. at 509, 397 A.2d at 1032; *O & B Inc. v. Maryland Nat'l Capital Park, Etc., supra,* 279 Md. at 466, 369 A.2d at 556; *Board v. John K. Ruff, supra,* 278 Md. at 587, 366 A.2d at 364. By expressly including these State agencies and their employees within the scope of the Local Government Tort Claims Act, the Legislature implicitly excluded other State entities and officials such as sheriffs and deputies.[10] As we stated in *Office*

10. The General Assembly's awareness that it was including certain state agencies under the definition of local government, but not others, is evidenced by the legislative history of the bill. The Department of Legislative Reference file contains a letter, dated February 24, 1987, from John Sellinger, President-Elect of the Maryland Trial

*and Prof. Employees Int'l v. MTA*, 295 Md. 88, 96, 453 A.2d 1191 (1982), "It is a settled principle of statutory construction that the Legislature's enumeration of one item, purpose, *etc.,* ordinarily implies the exclusion of all others." *See also Goldberg v. State*, 315 Md. 653, 662, 556 A.2d 267 (1989).

While the Local Government Tort Claims Act imposes no obligation on counties to pay for liability claims rendered against sheriffs or deputies, the Attorney General contends that § 2-309 of the Courts and Judicial Proceedings Article obliges counties to pay for all expenses incurred in connection with the operation of the sheriffs' offices, including liability costs. Section 2-309 states in relevant part as follows (emphasis added):

"**§ 2-309. Salaries and expenses; deputies; employees; equipment.**

(a) *In general.*—The sheriff of a county and his deputies shall receive the annual salaries provided by this section for performing the duties required of them by the Constitution and the laws of this State. They shall be reimbursed for expenses as provided by law.

\* \* \* \* \* \*

"(aa) *Office and expenses.*—The government of each county shall furnish an office for the sheriff and pay *the necessary expenses for telephones, stationery and for other purposes,* and unless otherwise provided by law, shall provide for the necessary traveling expenses of the sheriff for conveying prisoners to any penal institution in the State and other necessary traveling expenses."

The Attorney General argues that a county's funding obligation goes beyond the items specifically enumerated in

Lawyers Association to the Members of the Senate Judicial Proceedings Committee. The letter referred to the inclusion of certain state agencies within the definition of "local government," and said: "There is no justification for including these groups which are not 'local government' within the protection of this Bill." The definition of "local government," however, was not modified by the General Assembly.

§ 2-309(aa), and embraces any expenses that might be connected with the sheriffs' operations, including the payment of claims for tortious actions taken by deputy sheriffs. The Attorney General reasons that § 2-309(aa)'s mandate that counties "pay the necessary expenses for telephones, stationery and for other purposes ..." includes liability costs since such costs, in the Attorney General's view, are "necessary" expenses of any sheriff's office. Harford County, on the other hand, argues that the language of § 2-309(aa) requires the county to furnish only the enumerated items plus incidentals such as office supplies. Harford County maintains that reading county responsibility for liability expenses into the general language of § 2-309(aa) violates settled principles of statutory construction.

Under the doctrine of *ejusdem generis*, where "the general words in a statute, such as 'other things of value' ... follow the designation of particular things or classes of subjects, ... the general words in the statute will usually be construed to include only those things of the same class or general nature as those specifically antecedently mentioned." *State v. Sinclair*, 274 Md. 646, 658, 337 A.2d 703 (1975). We have applied this doctrine to construe general statutory language as including only entities similar to those specifically listed. *See, e.g., Maus v. State*, 311 Md. 85, 105 n. 9, 532 A.2d 1066 (1987); *State v. 149 Slot Machines*, 310 Md. 356, 363, 529 A.2d 817 (1987).

In § 2-309, the general words "and for other purposes" follow the specific language "furnish an office ... and pay the necessary expenses for telephones, stationery." Applying the principle of *ejusdem generis*, we conclude that the general language of § 2-309 encompasses only expenses of a similar type, *e.g.*, for space, supplies, equipment, utilities and similar services which are necessary for the operation of the sheriff's function. Particularly in light of the exclusion of sheriffs from the Local Government Tort Claims Act, and their inclusion in the Maryland Tort Claims Act, discussed *infra* Part B, the language of § 2-309 should not be read to include tort liability expenses, which are dissimi-

lar and not necessary for the operation of the sheriff's function.

The Attorney General finds support for his view in the legislative history of § 2–309. He traces the history of this enactment to 1945 when Art. IV, § 44, of the Constitution was amended to eliminate the practice of funding sheriffs' offices through the fees which those offices collected. *See Green v. State, supra,* 122 Md. at 293–294, 89 A. at 610. Under the amended constitutional provision, the fees collected by the sheriffs were paid to the county treasurers, and the sheriff in each county would "receive such salary or compensation and such expenses necessary to the conduct of his office as may be fixed by law." Code (1939, 1947 Cum.Supp.), Art. 87, § 37B, provided that

> "The Sheriffs of the several counties and of Baltimore City and their deputies shall receive annually the respective salaries herein prescribed ... *and such expenses as are provided for by law in this section or by law in the respective counties, the said salaries and expenses to be paid for by Baltimore City and the respective counties....*" (Emphasis added).

Upon recodification, the statute was amended to read as it currently does.

The Attorney General contends that this history indicates that the counties' financial responsibility is not limited to enumerated expenses and similar items, but includes all expenses involved in the operation of the sheriffs' offices. In our view, however, the statutory language, in all of its variations, mandates only that the counties pay for expenses "as are provided for by law." The Attorney General points to no statute expressly providing that the counties pay tort liability expenses for the sheriffs' offices, the sheriffs, or their deputies. On the contrary, as previously discussed, the one statute which expressly deals with this subject, the Local Government Tort Claims Act, does not include the sheriffs.

We conclude, therefore, that under Maryland law, Harford County is generally not obliged to fund any of the expenses associated with tort liability claims against the Harford County Sheriff, Deputy Sheriffs, or the Sheriff's Office.

**B.**

Turning to the State's responsibility for tort liability claims, we begin with the settled principle that the State and its agencies are "generally immune from [tort] suits, unless the immunity has been waived by the General Assembly." *Md.--Nat'l Cap. P. & P. Comm'n v. Kranz, supra,* 308 Md. at 622, 521 A.2d at 731. *See Clea v. Baltimore, supra,* 312 Md. at 670, 541 A.2d at 1307; *State v. Hogg,* 311 Md. 446, 458–465, 535 A.2d 923 (1988). The only waiver of immunity discussed by the parties, and the only waiver which apparently might be applicable to the type of activity involved in the present case, is the Maryland Tort Claims Act, Code (1984, 1988 Cum.Supp.), § 12–101 through 12–110 of the State Government Article. With certain limitations, the Maryland Tort Claims Act waives the tort immunity of the State and its agencies, and provides that State personnel are immune from individual liability based on acts for which the State has waived its immunity.

The Attorney General argues that the Maryland Tort Claims Act is inapplicable to the acts of sheriffs and their deputies because they are not "State personnel" for purposes of the Act. We disagree.

Section 12–101 of the Tort Claims Act defines the State personnel to whom the Act applies as follows (emphasis added):

"In this subtitle, unless the context clearly requires otherwise, 'State personnel' means:

(1) a classified, unclassified, or contractual employee of the State whose compensation is paid wholly or partly from State funds;

(2) a key employee of the Maryland Port Administration, as described in § 6–204(n) of the Transportation Article;

(3) a person who, as a volunteer, is providing a service to or for the State;

(4) *an individual who, with or without compensation, exercises a part of the sovereignty of the State;* or

(5) a student enrolled in a State educational institution:

(i) who is providing services to third parties in the course of participation in an approved clinical training or academic program;

(ii) who, as determined by the Treasurer, is required to have liability insurance covering claims arising from services to third parties performed by the student in the course of the approved clinical training or academic program;

(iii) who, as determined by the Treasurer, cannot obtain commercial liability insurance at an affordable cost; and

(iv) who, as determined by the Treasurer, may be required to contribute to an insurance program for claims arising from services to third parties performed by the student in the course of the approved clinical training or academic program."

Subsection (4) of § 12–101 literally covers sheriffs and deputy sheriffs, and the Attorney General does not argue otherwise.[11] Rather, the Attorney General contends that subsection (4) should not be given a literal construction, as this would render the State liable for the tortious acts of public officials and employees at every level of government, including many whose offices were created by local charters or local ordinances. At oral argument before us, the Attorney General's office insisted that subsection (4) should be read as embracing only those exercising part of the sovereignty of the State who are compensated by the State instead of by local governments.

We agree with the Attorney General that subsection 4 of § 12–101 cannot reasonably be read to encompass every

---

**11.** We note that the General Assembly has amended the language of § 12–101 by Ch. 413 of the Acts of 1989. Since the amendment is not effective until July 1, 1989, and since no argument has been made based on the amended language, we do not consider it.

individual exercising part of the sovereignty of the State. Many county and municipal officials and employees could be said to exercise part of the sovereignty of the State. The General Assembly, in enacting § 12–101(4), obviously did not contemplate that the State was assuming liability for the torts of purely local government officials and employees. If it had, there would have been little reason to enact the Local Government Tort Claims Act or other legislation relating to the tort liability of local government personnel. As § 12–101 deals with "State personnel," § 12–101(4) should be limited to those who are State officers or employees, or to those directly acting for the State Government rather than for a county or municipality.

Nevertheless, the Attorney General's argument, that § 12–101(4) should be confined to those compensated by the State Government, is untenable. It contradicts the plain language and obvious purpose of subsection (4). The language of the subsection specifies "with or without compensation," and clearly includes persons not compensated by the State. Moreover, the Attorney General's construction would largely render subsection (4) meaningless; all categories of employees compensated "wholly or partly from State funds" are already covered by subsection (1) of § 12–101.

Alternatively, the Attorney General argues that § 12–103(3) of the Maryland Tort Claims Act limits the definition of "State personnel" in § 12–101, and causes sheriffs and deputy sheriffs to be excluded from the Act's coverage. Section 12–103 of the Act states in relevant part as follows:

"§ 12–103. Scope of subtitle.
This subtitle does not:

\*     \*     \*     \*     \*     \*

(3) apply to or waive any immunity of a bicounty unit, county, municipal corporation, or other political subdivision or any unit, official, or employee of any of those agencies or subdivisions."

The Attorney General's reliance on this provision is misplaced. Except for employees of bicounty units, the language of § 12–103(3) has no application to State officials or State employees. The provision relates to local government bodies, their officials and their employees. As discussed in Part I of this opinion, however, sheriffs and deputy sheriffs are not officials and/or employees of local governments; instead, they are State officers and/or employees. Moreover, the language of § 12–103(3) in no way purports to limit the definition of "State personnel" in § 12–101 or to limit the State Government's liability for the torts of State personnel. Section 12–103(3) is simply a disclaimer, making it clear that the State Government's waiver of immunity for the torts of State personnel has no effect upon whatever immunity local governments or local government personnel may enjoy under common law or other statutory provisions. By its plain language, § 12–103(3) has utterly no relevance to the issue of whether the torts of certain State officials, namely sheriffs and deputy sheriffs, acting within the scope of their employment, are encompassed by the Maryland Tort Claims Act.

Subsection (4) of § 12–101, by referring to those exercising a part of the sovereignty of the State, and by making the matter of compensation irrelevant, seems particularly applicable to State officers like sheriffs, state's attorneys, orphans' court judges, and similar officials, who are performing fundamental State government functions but who may not be compensated by the State government. It seems to have been specifically designed to cover these personnel, based upon the language used and the fact that virtually all other categories of State personnel appear to be encompassed by other subsections.

Additionally, there is some legislative history supporting the view that sheriffs and their deputies are covered by the Maryland Tort Claims Act. The Department of Legislative Reference file on Senate Bill 585 of the 1981 legislative session, which, when enacted as Ch. 298 of the Acts of 1981, became the Maryland Tort Claims Act, contains written

testimony of then Attorney General Sachs in support of the bill. In his remarks, Attorney General Sachs first dealt with public official immunity as follows (emphasis added):

"[U]nder State law, it is only 'public officials,' not 'public employes,' who enjoy a qualified immunity as the 'sovereign's' agents. Unfortunately, consistency is not the hallmark of judicial decisions determining which public servants are 'employees' and 'officials.' *A sheriff,* a reformatory superintendent and members of the Board of Trustees of a State Normal School have been held to be 'public officials'. A public school teacher, Chief of the Right of Way Department of the State Highway Administration, a deputy state auditor, an assistant attorney general, members of the State Racing Commission and a superintendent of public instruction have been held to be public employees.

> \*      \*      \*      \*      \*      \*

*"The argument for some form of immunity is especially compelling when a public employee, like a police officer or sheriff, must make difficult decisions that require substantial judgment very quickly."*

The Attorney General, urging passage of S.B. 585, went on:

"It does waive, at least conditionally, sovereign immunity in those areas that encompass most of the 'ordinary' torts, thus, giving citizens injured by State governmental action rights that are comparable to those accorded persons who are injured by the acts of private citizens. S.B. 585 would also abolish the arbitrary distinction between State 'officials' (who now have qualified immunity) and State 'employees' (who don't). *ALL State workers who act within the scope of their public duties and without malice would be covered."* [12]

---

12. In a 1980 opinion, the Attorney General construed the language of Code (1957, 1980 Repl.Vol.), Art. 78A, § 16C(d)(1), which was part of a forerunner to the Maryland Tort Claims Act and which authorized the Board of Public Works to pay, in its discretion, "all or part of any

Consequently, we hold that sheriffs and deputy sheriffs are included within the definition of "State personnel" in the Maryland Tort Claims Act. To the extent that the Maryland Tort Claims Act is otherwise applicable to particular tortious acts of a sheriff or deputy sheriff committed in the scope of employment, the State bears financial responsibility for judgments, settlements, and defense costs in accordance with the terms, conditions, and limitations of the Tort Claims Act.[13]

CERTIFIED QUESTIONS ANSWERED AS HEREIN SET FORTH. COSTS TO BE EVENLY DIVIDED AMONG APPELLANTS AND APPELLEES IN ACCORDANCE WITH THE CERTIFICATION ORDER.

---

settlement or judgment rendered ... against a State officer or employee." Section 16C(d)(1) provided:

"For the purposes of this section, the term 'State officer' includes a person who holds a position which ... involves the discharge of a portion of the sovereignty of the State, regardless of the amount or source of his compensation."

The Attorney General's opinion argued against a literal reading of the language of the Act. The Attorney General concluded that § 16C(d)(1)'s definition of a State officer was "not merely any 'officer who exercises ... a portion of the State's sovereignty, but is limited to one who does so directly on the State's behalf and not merely, by delegation, on behalf of a political subdivision of the State." 65 Op.Att'y Gen. 385, 388–389 (1980).

Under a similar construction of § 12–101(4), sheriffs and their deputies are clearly included. The sheriff and his deputy's exercise of sovereignty is directly on the State's behalf, not on behalf of the county or the city in which they operate.

13. We note that § 12–103(2) of the Maryland Tort Claims Act provides as follows:

"**§ 12–103. Scope of subtitle.**

This subtitle does not:

\*     \*     \*     \*     \*     \*

"(2) waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States or any other state, including any defense that is available under the 11th Amendment to the United States Constitution;...."

Section 12–104(a) also states that the "immunity of the State ... is waived as to a tort action, in a court of the State...." The relevance of the Maryland Tort Claims Act, and of our answer to the second certified question, to the present action pending in the United States District Court, are, of course, matters for the federal court.