Dear William M. Rudd,
On behalf of the Board of County Commissioners of Allegany County (the "County Commissioners"), you have asked our opinion concerning the authority of the Sheriff of Allegany County (the "Sheriff") in regard to planning and construction of a new County detention center. We understand that your request arose out of a dispute between the County Commissioners and the Sheriff concerning the services of a consultant retained by the County Commissioners in connection with the design and development of the new detention center. Although the matter has now been resolved, you seek guidance concerning the legal framework that governs the relationship between the Sheriff and the County Commissioners. In particular, you ask:
 (1) May the Sheriff make decisions concerning the new detention center during its construction, before the facility is turned over to the Sheriff?
 (2) May the Sheriff decline to give the consultant access to the current detention center for the purpose of training detention center employees on correctional methods to be used at the new facility?
In our opinion, while the Sheriff lacks authority to make decisions concerning the construction of the new detention center before he assumes responsibility for its operation, he may, and should, participate in planning related to the operation of that facility. Moreover, as long as the Sheriff retains responsibility for operating the County detention center, the Sheriff need not use a consultant selected by the County Commissioners to train detention center employees on correctional matters.
 I Background
A. Allegany County Detention Center
The existing Allegany County Detention Center, built in 1969 and located behind the Court House in Cumberland, is operated by the Sheriff. The County is currently constructing a new 190-bed detention center outside Cumberland with a combination of State and local funding.
The County Commissioners have retained a consultant to assist in the design and development of the new detention center. Apparently, both the Sheriff and the County Commissioners have agreed that the new detention center will be designed to accommodate the concept of "direct supervision" of inmates.[1] The County Commissioners have also retained the same consultant to train correctional employees in that method of supervision. Among other things, the consultant developed a job description for the position of detention center administrator, who is to be hired by the Sheriff.
Apparently, as a result of lack of communication between the County Commissioners' office and the Sheriff concerning the duties of the consultant, the Sheriff temporarily barred the consultant from the current detention center and instructed employees of his office not to cooperate with the consultant regarding training or the development of policies and procedures for the new facility. This misunderstanding has since been resolved, and the consultant has trained correctional employees with the assent of the Sheriff.
B. Office of the Sheriff
The State Constitution provides for the election of a sheriff in each county and Baltimore City. Maryland Constitution, Article IV, § 44. The sheriff exercises the powers and performs the duties prescribed by the common law, except as modified by statute or, to the extent the matter involves practice and procedure in the courts, by rule of the Court of Appeals. See Prince George's County v. Aluisi, 354 Md. 422,433, 731 A.2d 888 (1999); Soper v. Montgomery County, 294 Md. 331, 337,449 A.2d 1158 (1982); 79 Opinions of the Attorney General ___ (1994) [Opinion No. 94-043 (August 17, 1994)]; 84 Opinions of the AttorneyGeneral ___ (1999) [Opinion No. 99-016 (October 18, 1999)]. Under Maryland law, a sheriff is a State official. Rucker v. Harford County,316 Md. 275, 289-290, 558 A.2d 399 (1989). Although a sheriff's office is substantially funded by the county, "county officials may not directly abridge the functions and duties of a sheriff under the common law and enactments of the General Assembly." Id., 316 Md. at 288. "[O]nly the General Assembly can change the duties and functions of the sheriff." Id.[2]
At common law, the powers of the sheriff included "conserving public peace, preserving public order, preventing and detecting crime, enforcing criminal laws by, among other things, raising a posse and arresting persons who commit crimes in [the sheriff's] presence, providing security for courts, serving criminal warrants and other writs and summonses, and transporting prisoners." Soper, 294 Md. at 336-37.
Among the common law duties of a sheriff was responsibility for the care and control of prisoners committed to the county jail. Bowie v. Evening News Co., 151 Md. 285, 297, 134 A. 214 (1926); see also Harford County v. University of Maryland Medical System Corporation, 318 Md. 525,528, 569 A.2d 649 (1990) ("One of the principal duties of the sheriff at common law was to act as the jailor of the shire or county in which he served"); 1 W. Anderson, A Treatise on the Law of Sheriffs, Coroners and Constables §§ 263 and 267 (1941). Thus, under the common law the sheriff had control of the county jail. 72 C.J.S. Prisons § 14 (1987).
The Legislature has codified many of the common law duties of the sheriff and, in large measure, has left those duties intact. Soper,294 Md. at 337, citing Comment, The Maryland Sheriff v. Modern and Efficient Administration of Justice, 2 U. Balt. L.Rev. 282, 288 (1973). Now included among the sheriff's statutory duties is the obligation to "keep safely each individual lawfully committed to the sheriff's custody." Annotated Code of Maryland, Correctional Services Article ("CS") § 11-201(a).
Although the Legislature has authorized home rule counties to assume responsibility for operation of their jails, Allegany County has not exercised this option.[3] Therefore, the Allegany County Sheriff remains the "managing official" responsible for the operation of the County detention center and for the care of its inmates. CS §§ 1-101(k), 11-203(a)(1). The Sheriff is also considered the "managing official" of the detention center for purposes of complying with applicable mandatory standards established in regulations adopted by the Secretary of Public Safety and Correctional Services. See COMAR12.14.01.01.B(54) and 12.14.03.02, et seq.[4]
C. Role of the County
Under State law, the County Commissioners are responsible for funding the Office of the Sheriff.[5] Annotated Code of Maryland, Courts and Judicial Proceedings Article ("CJ") § 2-309(a-1). Therefore, while the Sheriff is responsible for the care of inmates in the detention center, the County must bear the costs of that care. See CS § 11-203(a)(2); see also Harford County v. University, 318 Md. 525,569 A.2d 649 (1990). The Legislature has also addressed in public local law the Allegany County's obligation to fund the cost of operating the County detention center. See Public Local Laws of Allegany County, §§ 70-1 and 70-2.[6]
The Office of the Sheriff is subject to the budget and fiscal policies and procurement laws of the County. Annotated Code of Maryland, Article 24, § 8-101(3). However, the County may not administer its policies in a manner that precludes the Sheriff from carrying out responsibilities imposed by applicable law. Rucker, 316 Md. at 288. See also 80 Opinions of the Attorney General ___ [Opinion No. 95-025 (July 11, 1995)] ("Article 24, § 8-101 requires . . . county-funded State entities to submit to county budget procedures, not county budget control").
D. Jail Employees
Under State law, the Allegany County Sheriff must appoint a minimum number of deputy sheriffs, who are in the County classified service.[7]
CJ § 2-309(b)(2). With the approval of the County Commissioners, the Sheriff may appoint a chief deputy sheriff, who serves at the Sheriff's pleasure and is not in the County classified service. CJ § 2-309(b)(6).
Although deputy sheriffs are subject to administrative practices applicable to County employees, they remain State officials. Rucker,316 Md. at 290-291; Penhollow, 116 Md. App. at 296. Like other employees in the Sheriff's Office, they are under the Sheriff's supervision. See, e.g., 84 Opinions of the Attorney General ___ (1999) [Opinion No. 99-016 (October 18, 1999)] (legislation placing Garrett County deputy sheriffs and other sheriff's office employees in county classified service does not alter sheriff's role as appointing authority; however, sheriff must comply with county classified service procedures). Although deputy sheriffs and correctional officers in Allegany County are separate career fields under the applicable collective bargaining agreement,[8]
administratively the positions are treated similarly. Significant for purposes of our analysis, both deputies and correctional officers are recognized as employees of the Sheriff.
 II Analysis
A. New Detention Center
It is beyond dispute that a county detention center is a county facility, regardless of whether the local sheriff is responsible for its operation. The Legislature has provided that a county may establish and maintain a local detention center. CS § 11-102(a).[9] Furthermore, under the Express Powers Act, any county that has adopted home rule has authority to establish a detention center and control its operation.[10]
State financial assistance for construction or expansion of a detention center is available to county governments. See §§CS 11-104 and11-105. In contrast, no State law authorizes a sheriff to build or oversee construction of a county jail or detention center.
While the County is thus responsible for constructing the new detention center, it is certainly prudent for the official who will be responsible for its operation to be involved in its development, as the design of the facility will inevitably affect management of the inmates. In Allegany County, the adoption of a new method of inmate supervision appears to mandate a particular design for the facility, if that method is to succeed. See footnote 1, supra. No statutory or common law principle grants the Sheriff the right to make decisions concerning the new facility before it is turned over to him for operation. However, if the Sheriff and the County Commissioners had not agreed on the new approach to supervision, and if the County Commissioners had not taken that approach into account in the design, the facility might well have failed to serve its purpose. In another context, Attorney General Burch commented that such a situation "necessarily mandates a good faith working relationship between the two offices and requires the sheriff and the county commissioners to make honest attempts to resolve their differences through negotiation and compromise." 60 Opinions of theAttorney General 647, 657 (1975). It is commendable that the County Commissioners and the Sheriff have heeded that advice in these circumstances.
B. Consultant's Access to Detention Center Employees
Under current law, the Sheriff is responsible for operation of the County detention center. However, a variety of State and local laws direct the exercise of that responsibility. For example, in administering the detention center, the Sheriff is subject to State law governing certain employment matters. See, e.g., CS § 2-309(b)(7). Further, the Sheriff is subject to the County budget and fiscal policies and procurement law. Annotated Code of Maryland, Article 24, § 8-101(3). The Sheriff must also comply with requirements adopted by the Correctional Training Commission when he appoints and trains correctional officers. See CS § 8-209; see also COMAR 12.10.01.01 et. seq. As previously noted, although detention center employees are subject to County personnel rules, they remain employees of the Sheriff, subject to the Sheriff's authority and direction.
Within this framework, there may be circumstances under which the County Commissioners could require that employees of the Sheriff's Office undergo certain training or that the Sheriff grant a consultant selected by the County Commissioners access to the detention center. For example, if County personnel rules required that all employees in the classified service receive training on the obligations and benefits of their employment, the Sheriff would be expected to cooperate. Similarly, if the County installed a central computerized purchasing system, employees of the Sheriff's Office would likely need training on that system along with other County personnel. If the County's budgetary procedures required each unit receiving County funding to submit to a financial audit by an outside auditor, the Sheriff would be expected to cooperate with the auditor selected by the County. Each of these examples is based on a particular State statute. See, e.g., CJ § 2-309(b)(2); Article 24, § 8-101.
However, in the absence of any controlling statute and so long as the detention center remains under the control of the Sheriff, the County Commissioners may not require the Sheriff, a State constitutional officer, to cooperate with a consultant selected by the County Commissioners to train correctional officers on matters exclusively within the Sheriff's authority. To conclude otherwise could allow the County Commissioners to directly abridge the functions and duties of the Sheriff.[11] Nonetheless, in the interest of efficient and effective use of public resources, it is incumbent upon the Sheriff and the County Commissioner to coordinate the training of correctional employees to take advantage of the design of the new facility.
 III Conclusion
While the Sheriff may, and should, participate in the planning and development of new County detention center, the Sheriff may not decide matters concerning construction of the facility before it is turned over to him for operation. On the other hand, as long as the detention center is operated by the Sheriff, the County Commissioners cannot require that the Sheriff use a consultant selected by the County Commissioner to train detention center employees in correctional matters. Thus, in order for the Sheriff to carry out his responsibilities effectively and for the County Commissioners to discharge their obligation to deploy County resources economically, the Sheriff and the County Commissioners must cooperate with respect to both the construction and operational planning of the new detention center.
 J. Joseph Curran, Jr. Attorney General
 William R. Varga Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions Advice
[1] The new detention center will include podular living units. This design will allow inmates within a unit to have more interaction while their activities are constantly monitored by a correctional officer who is stationed within the unit — a method referred to as "direct supervision." In contrast, the current detention center is of a traditional design that requires the use of "indirect supervision") i.e., correctional officers monitor inmate activity through intermittent surveillance. For a description of "new generation jails" using podular units, see Bayens, et. al., Jail Type and Inmate Behavior: A Longitudinal Analysis, 61 Fed. Probation 54 (September 1997).
[2] We recognize that the United States Court of Appeals for the Fourth Circuit, in a case brought under 42 U.S.C. § 1983, has held that a sheriff was "final policy maker for the County" in operating the county jail. Dotson v. Chester, 937 F.2d 920 (4th Cir. 1991). However, this decision does not alter the allocation of responsibility between county commissioners and the sheriff under State law. See Penhollow v. Board of County Commissioners for Cecil County, 116 Md. App. 265, 695 A.2d 1268
(1997).
[3] In 1974, Allegany County adopted code home rule under Article XI-F
of the Maryland Constitution. In a letter of advice dated December 4, 1995, Assistant Attorney General Richard E. Israel concluded that the County Commissioners of Allegany County may assume responsibility for operation of the detention center under the Express Powers Act, Annotated Code of Maryland, Article 25A, § 5(C)) authority applicable to code home rule counties under Article 25B, § 13 of the Annotated Code.
A county that has adopted charter home rule under Article XI-A of the Maryland Constitution has separate authority under CS § 11-201(b) to appoint a managing official to operate the county's detention center. This latter provision was originally enacted as Article 87, § 46A of the Annotated Code by Chapter 103, Laws of Maryland 1950. CS § 11-201(B) does not apply to a code home rule county; it was enacted 16 years before Article XI-F of the Constitution offered counties the alternative of code home rule. Although CS § 11-201(b) has been recodified, it has not been substantively modified since it was enacted.
[4] The sheriff is also considered the "governing authority" in reference to adult places of confinement under the sheriff's jurisdiction. COMAR 12.14.01.01.B(45)(b). As the designated governing authority, the sheriff would be a required party in a proceeding before the Commission on Correctional Standards concerning closure of a detention center. COMAR 12.14.06.03.
[5] However, every duty of a sheriff is not necessarily a financial obligation of the county. See, e.g., Aluisi, 354 Md. at 441 (cost of providing District Court security is to be borne by the State).
[6] The last substantive amendment to the Public Local Laws of Allegany County occurred in 1963. While these provisions appear antiquated in part, they do not conflict with provisions of public general law relating to these issues.
[7] Other employees in the Sheriff's Office are also included in the County personnel system. If authorized by the County Commissioners, the Sheriff may employ a clerk-bookkeeper, who will be a member of the County classified service. CJ § 2-309(b)(4). Cooks in the detention center are also part of the county classified service. Public Local Laws of Allegany County, § 70-1.A.1.
[8] The Legislature has granted collective bargaining rights to deputy sheriffs below the rank of lieutenant, correctional officers, and civilian employees of the Sheriff's Office, including employees assigned to the County detention center. CJ § 2-309(b)(7). The Sheriff is required to meet with a labor organization and "engage in good faith negotiations to reach a written agreement on wages and benefits, hours, working conditions, discipline procedures, and job security issues." CJ § 2-309(b)(7)(iii).
[9] This provision does not apply to Baltimore City. CS § 11-101. The Baltimore City Detention Center is a State facility. See CS § 5-401(a).
[10] Annotated Code of Maryland, Article 25A, § 5(C) provides:
 The following enumerated express powers are granted to and conferred upon any county or counties which hereafter form a charter under the provisions of Article XI-A of the Constitution, that is to say:
. . .
 To erect, establish, maintain and control hospitals, almshouses, pesthouses or other similar institutions within the county, and make all regulations for the government and conduct of the same; to erect, establish and maintain courthouses; to establish, maintain, regulate and control county jails, and county houses of correction or detention and reformatories, and to regulate all persons confined therein; to make proper provision for female and juvenile offenders.
Article 25B, § 13 extends this authority to counties that have adopted code home rule. See note 3, supra.
[11] For purposes of your inquiry, we need not address to what extent, if any, the Express Powers Act, Annotated Code of Maryland, Article 25A, § 5(C), would allow a home rule county to regulate operation of a county detention center through county legislation without removing the facility from under the jurisdiction of the sheriff.
 *Page 348