731 A.2d 888

**PRINCE GEORGE'S COUNTY, Maryland**

**v.**

**James V. ALUISI, et al.**

**No. 65, Sept. Term, 1997.**

Court of Appeals of Maryland.

June 8, 1999.

Reconsideration Denied July 27, 1999.

424

Sean D. Wallace, Deputy County Atty., Upper Marlboro, for appellant.

Lawrence P. Fletcher-Hill, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Julia M. Freit, Asst. Atty. Gen., Margaret Wwitherup Tindall, Staff Atty., on brief), Baltimore, for appellees.

Charles W. Thompson, Jr., County Atty., Karen L. Federman Henry, Principal Counsel for Appeals, Judson P. Garrett, Jr., Chief, Opinions and Advice, amicus curiae for Montgomery County, MD.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and DALE R. CATHELL (Specially assigned), JJ.

ELDRIDGE, Judge.

This case arises out of a dispute over whether the State of Maryland or Prince George's County has the responsibility of funding the security and service of process associated with the District Court of Maryland, sitting in Prince George's County.

## I.

The present litigation began with a "Complaint for Writ of Mandamus" filed in the Circuit Court for Prince George's County by a management corporation that operates residential apartment communities. The initial defendants were Prince George's County and the Sheriff of Prince George's County, James Aluisi. The management corporation alleged that the Sheriff's office failed to serve process in landlord-tenant actions involving the management corporation. The complaint requested that the Sheriff be required to serve all process and that the County be required adequately to fund the Sheriff's office. The Sheriff, in his answer to the complaint, claimed that inadequate funding from the County was the reason that he was unable to serve process. The Sheriff filed a cross claim against Prince George's County, requesting declaratory and injunctive relief with respect to the issue of inadequate funding. Thereafter, the management corporation dismissed its complaint, without prejudice, against Prince George's County; the corporation sought relief only against Sheriff Aluisi. Prince George's County then filed a cross claim against Sheriff Aluisi, alleging waste and mismanagement of county funds by the Sheriff's office and requesting an audit and the appointment of a receiver. Contending that many of the duties that Sheriff Aluisi alleged he was unable to perform because of inadequate funding were actually the responsibility of the State to fund, the County also filed a third-party complaint against the State of Maryland, the Honorable Martha F. Rasin who is Chief Judge of the District Court of Maryland, and the Honorable Frank M. Kratovil who is the District Court Administrative Judge for District 5 (Prince George's County). The County requested a declaratory judgment, an "injunction" requiring the State and the State Offi-

cials to provide process service and court security for the District Court at state expense, reimbursement for the costs of those services already provided "from 1971 to present," and a writ of mandamus directing the state officials to appoint constables to serve process.

Initially, the circuit court granted the relief sought by the management corporation, issuing a writ of mandamus requiring the Sheriff's Office to serve all district court "summonses concerning failure to pay rent suits" and requiring the Sheriff's Office to "execute all warrants of restitution issued in landlord/tenant cases as directed by the" judges of the District Court in Prince George's County. Thereafter, on cross-motions for summary judgment, the circuit court on May 22, 1997, filed a comprehensive written opinion containing a declaration of the duties and obligations of the various parties. At the same time, the circuit court filed an order providing in pertinent part as follows:

"1. The Sheriff of Prince George's County shall provide security for the District Court of Maryland for Prince George's County; including, but not limited to, courtroom security and the transportation of individuals in custody, and that Prince George's County, Maryland, shall provide necessary funding to the Sheriff to pay the costs of maintaining the District Court security function; and

"2. The Sheriff of Prince George's County shall serve all civil and criminal process as directed by the Administrative Judge of the District Court of Maryland for Prince George's County (District 5) and that Prince George's County, Maryland shall provide the necessary funding to the Sheriff to pay the costs of the Sheriff to serve all District Court process...."

The circuit court's declaratory judgment and orders disposed of all claims and issues involving the management corporation, the State of Maryland, Chief Judge Rasin, and Administrative Judge Kratovil. The declaratory judgment and orders also disposed of all claims and issues between

Prince George's County and Sheriff Aluisi except for the County's cross claim against the Sheriff alleging waste and mismanagement of county funds and seeking the appointment of a receiver. The circuit court indicated that this separate claim against the Sheriff should be considered at a subsequent hearing. In addition, the circuit court, expressly finding no just reason for delay, certified the filed judgment and orders as final pursuant to Maryland Rule 2–602(b).

Prince George's County filed a notice of appeal from the declaratory judgment and orders. Prior to any proceedings in the Court of Special Appeals, the County filed in this Court a petition for a writ of certiorari. The three issues presented by the County are whether the Sheriff must provide security for the District Court in Prince George's County at the County's expense, whether process service by the Sheriff's Office is part of the costs of the District Court which should be borne by the State, and whether "the District Court [can] avoid its obligation to appoint constables by directing [that] all its process ... be served by the Sheriff." Because of the importance of these questions, we granted the County's petition. *Prince George's County v. Aluisi*, 346 Md. 632, 697 A.2d 915 (1997).

## II.

Before addressing the parties' specific arguments, we shall set forth some of the pertinent constitutional and statutory background.

Prior to July 1971, the trial courts of limited jurisdiction in Maryland, other than the Orphans' Courts, consisted of Justices of the Peace sitting as Trial Magistrates, People's Courts in Baltimore City and a few counties, and the Municipal Court of Baltimore City. These courts "var[ied] in jurisdictional authority, facilities, clerical assistance, and their judges var[ied] in qualifications, term, pay and method of selection. As had been said many times, the system [was] a hodgepodge and badly in need of revision...." Maryland State Bar Association's Committee on Judicial Administration (1968), quoted in William H. Adkins II, *The District Court: Past,*

*Present, Future,* 3 Md. Bar Journal (No. 4) 6, 7 (1971). With regard to these pre–1971 courts of limited jurisdiction, Judge Adkins observed that ":each political subdivision went its own way and diversity, non-professionalism, political influence and confusion were the watchwords." *Id.* at 7. The funding of these pre–1971 courts of limited jurisdiction was the obligation of the counties and Baltimore City.

In 1969, Governor Marvin Mandel proposed to the General Assembly a constitutional amendment abolishing the office of Justice of the Peace, Trial Magistrates' Courts, People's Courts, and the Municipal Court of Baltimore City, and replacing them with a single statewide court of record named the District Court of Maryland, with basically uniform jurisdiction throughout the State, with full time judges having the same qualifications as judges of the circuit courts, Court of Special Appeals and Court of Appeals, with a single Chief Judge appointed initially by the Governor and thereafter by the Chief Judge of the Court of Appeals, and *funded entirely by the State.* The General Assembly passed the proposed constitutional amendment, Ch. 789 of the Acts of 1969, and the voters of Maryland ratified it on November 3, 1970.

In addition, the Governor proposed and the General Assembly enacted in 1970 and 1971 comprehensive legislation implementing the constitutional amendment creating the District Court. *See* Ch. 528 of the Acts of 1970 and Ch. 423 of the Acts of 1971. At the same time, this Court, pursuant to its constitutional authority to adopt rules of practice and procedure and rules for the administration of the judiciary, Article IV, § 18, of the Maryland Constitution, adopted rules to implement the District Court constitutional and statutory provisions. Pursuant to the constitutional amendment and implementing legislation and rules, the District Court became fully operational on July 5, 1971.

Although the District Court is a single unified statewide court, with basically uniform jurisdiction and with each judge having territorial jurisdiction throughout the entire State, the implementing legislation does divide the State into twelve

districts "solely for purposes of operation and administration." *Birchead v. State,* 317 Md. 691, 699, 566 A.2d 488, 492 (1989). The geographic perimeters of the districts correspond to county boundary lines. Baltimore City and the five largest counties each constitute a single district, and each of the remaining districts consist of two or more counties grouped together. *See* Maryland Code (1974, 1998 Repl.Vol.), § 1–602 of the Courts and Judicial Proceedings Article. A District Court judge in each of the twelve districts is designated by the Chief Judge of the District Court, subject to the approval of the Chief Judge of the Court of Appeals, as the administrative judge of the district. The "administrative judge is responsible for the administration, operation, and maintenance of the District Court in that district and for the conduct of the District Court's business." Code (1974, 1998 Repl.Vol.), § 1–607 of the Courts and Judicial Proceedings Article. The Constitution also provides for the appointment of nonjudicial personnel for the District Court. Article IV, §§ 41F and 41G of the Constitution state that the Chief Judge of the District Court "shall appoint" a Chief Clerk of the District Court, a chief administrative clerk for each district, and "such deputy clerks, constables, and other officers of the District Court as may be necessary."

From the initial implementing legislation until the present, the General Assembly has provided that the entire cost of the District Court be borne by the State Government and not by the counties and Baltimore City. Section 1–608(a) of the Courts and Judicial Proceedings Article states as follows:

"The cost of maintenance, operation, and administration, and of providing necessary facilities, including capital costs, of the District Court shall be borne exclusively by the State, and, except as provided in Title 7 of this article, or otherwise expressly by law, all revenues derived from the operation and administration of the District Court shall enure to the general funds of the State."

Ch. 528 of the Acts of 1970 contained virtually identical language. *See Laws of Maryland 1970,* at 1263. It is noteworthy that the second clause of § 1–608(a), relating to reve-

nues enuring to the State, has one exception and, in addition, contemplates the possibility of other exceptions "expressly by law." The first clause, however, mandating that the State "exclusively" bear the cost of maintenance, operation, and administration of the District Court, has no exceptions and does not contemplate the possibility of exceptions under some other law.

Although the Constitution provides for the appointment of constables, the District Court implementing legislation deals with the appointment and duties of constables in more detail. Sections 2–604, 2–605 and 2–606 of the Courts and Judicial Proceedings Article state in pertinent part as follows:

" § 2–604. **Constables.**

(a) *Appointment; assignment to courts.*—The Chief Judge of the District Court, upon the recommendation of the administrative judge of each district, shall appoint the number of constables required to serve process of the District Court within that district. The administrative judge shall assign the constables to the various courts or divisions of courts within his district so that every court or division of a court has at least one constable."

\*     \*     \*

" § 2–605. **Service of process.**

(a) *Civil process.*—All civil process and papers of the District Court shall be served by the constables of the respective districts, except that the administrative judge of a particular district may order the papers and process served by the sheriff of the county.

(b) *Criminal and traffic process.*—All criminal and traffic process, including warrants and summonses for witnesses, shall be served by the constables of the respective districts, or by the sheriffs of the respective counties or by State or local police as the administrative judge of the district shall direct. However, summonses to witnesses in these cases may be served by mail, rather than by personal service, if the administrative judge of the district directs."

" § 2–606. **Duties of constables.**

A constable shall obey and execute all process directed to him from any judge of the District Court of Maryland concerning any matter within the court's jurisdiction and shall return the process according to its command. He shall serve and levy all executions issued by a judge of the District Court, and in so doing has the same powers, responsibilities and liabilities as a sheriff or deputy sheriff acting in the same capacity if the constable has satisfactorily completed a training program from a police training school approved by the Maryland Police Training Commission."

In addition, Maryland Rule 1–202(x) provides that the meaning of the word "Sheriff" in the Maryland Rules includes "with respect to the District Court, any court constable."

The office of sheriff dates at least from the ninth century, and by the eleventh century "the office of sheriff had taken the shape it was to keep for the next several centuries." Note, *The Maryland Sheriff v. Modern and Efficient Administration of Justice*, 2 U. BALT. L.REV. 282, 283 (1973). "All the powers and duties currently possessed by a sheriff in the United States are traceable to his common law counterpart in England." *Ibid.*

The first sheriff in Maryland was appointed in the early 1600's. The sheriff was "[a]ppointed by the governor ... [and] served all writs and warrants, punished criminals as directed, collected taxes, maintained prisons, took bail, held inquests, and made election returns." *Id.* at 285. The Constitution of 1776 provided that sheriffs be elected rather than appointed, but the provision did not contain an enumeration of the duties and powers of the sheriff.

■ In 1860, Chief Judge Le Grand wrote, in a concurring opinion in *Mayor, & c., of Baltimore v. State*, 15 Md. 376, 488 (1860), as follows:

"The 20th section of the fourth Article of the Constitution [of 1851], which mentions the office [of the sheriff], and provides for filling it, does not specify or describe the powers and duties of the sheriff. These are left to the common law and the Acts of Assembly. The charge of

other conservators of the peace is nowhere, in the Constitution, given to him. There is nothing to prohibit the Legislature from adding to or diminishing his duties...."

Under the current Constitution, which is the Constitution of 1867, Article IV, § 44, provides for the election of a sheriff in each county and in Baltimore City. Section 44 states that the sheriffs "exercise such powers and perform such duties as now are or may hereafter be fixed by law." Under this provision, the duties of the sheriffs are those prescribed by the common law, the enactments of the General Assembly, and the rules of the Court of Appeals. These duties may be changed by the General Assembly or, to the extent that the matter involves practice and procedure in the courts or the administration of the judiciary, by the Court of Appeals. *See Rucker v. Harford County,* 316 Md. 275, 286–289, 558 A.2d 399, 404–406 (1989), and cases there cited.

Moreover, "sheriffs retain their common law powers and duties until deprived of them by the [State] Legislature." *Soper v. Montgomery County,* 294 Md. 331, 337, 449 A.2d 1158, 1161 (1982). *See Harford County v. University,* 318 Md. 525, 528, 569 A.2d 649, 650 (1990); *Beasley v. Ridout,* 94 Md. 641, 650, 655–658, 52 A. 61, 64–66 (1902). Providing security for the courts is clearly a common law duty of the sheriffs if required by the courts. This Court in *Green v. State,* 122 Md. 288, 295–296, 89 A. 608, 610 (1914), stated:

"It has never been disputed, in this State, that it was the official duty of the sheriff, to attend in person, or by deputy, the sessions of the law courts of his county and in the City of Baltimore.

"It is difficult to see how the work of the courts could be properly and expeditiously conducted in the absence of an officer, clothed with the power and authority of the sheriff.

"It was the duty of the sheriff at common law to attend the courts, in person, or by deputy. *Blackstone's Commentaries,* Vol. 1, star page 345, and it has always been regarded as one of the official duties of his office to so attend the sessions of the law courts of the State."

*See also* Code (1974, 1998 Repl.Vol.), § 2–309(r)(8) of the Courts and Judicial Proceedings Article, which lists among the duties of the Prince George's County Sheriff's Office "security of all State and county courts and perform such duties as may be required of them by the courts. . . ."

Sheriffs and deputy sheriffs are state officials, not local government officials, and their duties are determined by state law, not locally enacted ordinances. *Rucker v. Harford County, supra,* 316 Md. at 281–291, 558 A.2d at 402–407. Nevertheless, under Article IV, § 44, of the Constitution, "[a]ll fees collected by the Sheriff shall be accounted for and paid to the Treasury of the several counties and of Baltimore City, respectively." Furthermore, § 2–309 of the Courts and Judicial Proceedings Article generally provides that the salaries, office expenses and traveling expenses, including automobiles, of the sheriffs' offices shall be paid by the counties. On the other hand, not necessarily all expenses by a sheriff's office are the financial responsibility of the counties and Baltimore City. If any appropriate expense of a sheriff's office is not by statute specifically made the responsibility of the local government, the local government is not obliged to provide the funds, and the State may be responsible for making the payment. *Rucker v. Harford County, supra,* 316 Md. at 294–302, 558 A.2d at 408–412. In addition, even when a particular expense of a sheriff's office is initially the responsibility of one governmental level, there may be inter-governmental reimbursement arrangements. *See, e.g.,* Code (1985, 1995 Repl.Vol.), § 9–108 of the State Finance and Procurement Article; Code (1974, 1998 Repl. Vol), § 2–404 of the Courts and Judicial Proceedings Article.

Turning to the present practice in the District Court of Maryland with respect to court security and service of process, we first point out that "we take judicial notice of the operation and practices of the courts of this State." *State v. Frazier,* 298 Md. 422, 430 n. 5, 470 A.2d 1269, 1273 n. 5 (1984). *See Davidson v. Miller,* 276 Md. 54, 79–81, 344 A.2d 422, 437–438 (1975). In Baltimore City and in most of the counties, District Court personnel designated as "bailiffs" generally

provide courtroom and courthouse security at District Court locations. Some of these bailiffs are regular District Court employees, but most of them are "contractual" employees; all are paid by the State. Where a District Court facility is located in a so-called multi-service building which contains other state agencies, building security may be partially provided by employees of the State Department of General Services; all such employees are also paid by the State.

Courtroom and courthouse security for the District Court is presently provided, in whole or in part, by the sheriffs' offices in three counties: Carroll, Charles, and Prince George's. In Carroll and Charles counties, the District Court pays the counties something for this service. It is apparently only in Prince George's County where the Sheriff's Office provides substantial security services to the District Court and where there is no reimbursement whatsoever for this service from the State to the County.

Under Maryland Rule 3–123(a), service of District Court civil process generally may be made by a sheriff, deputy sheriff, District Court constable, or "by a competent private person...." When service of District Court civil process is made by a government official, it is made by a sheriff or deputy sheriff in Baltimore City and in 21 counties. District Court criminal process in Baltimore City and in 21 counties is served by the sheriff's office or by a police department. There are no constables employed for District Court locations in Baltimore City and in 21 of the 23 counties. While the sheriffs' offices in Baltimore City and the 21 counties receive fees for service of process which go to the City and the counties, the State does not reimburse the counties if the expenses of process service by the sheriffs' offices exceed the fees.

Presently, and for the fiscal year beginning July 1, 1999, the District Court employs and will continue to employ only 15 constables. *See Maryland FY 2000 Budget, Operating Budget Part One,* at 97. Thirteen of these constables are employed at District Court locations in Baltimore County and

two in Washington County. Constables are used for service of District Court process only in these two counties. The salaries and expenses of the constables in the two counties are, of course, paid by the State, and the fees collected for service of process by these constables go to the State.

### III.

#### A.

We shall first address the issue of security. Prince George's County argues that, although the Sheriff is "authorized" to provide security for the District Court, the Sheriff has no common law or statutory "duty" or "obligation" to provide such security. The County contends that Code (1974, 1998 Repl.Vol.), § 2–309(r)(8) of the Courts and Judicial Proceedings Article, listing security for the courts as part of the duties of the Prince George's County Sheriff, is "permissive not mandatory." (Petitioner's reply brief at 2).

The County further argues that the provision of security is part of the District Court's "cost of maintenance, operation, and administration" which § 1–608(a) of the Courts and Judicial Proceedings Article mandates "shall be borne exclusively by the State." According to the County, "if the function [of the District Court security] is performed by the Sheriff as authorized, the State must reimburse the County for that cost." (Petitioner's reply brief at 5).

The State defendants maintain that the provision of security for the courts, including the District Court, is a common law duty of the sheriffs and is an expressed statutory duty of the Prince George's County Sheriff. With regard to § 1–608(a) of the Courts and Judicial Proceedings Article, requiring the State to bear the costs of "maintenance, operation, and administration" of the District Court, the State defendants assert that courtroom and courthouse security for the District Court is a "law enforcement function" and is not encompassed within the statutory phrase " 'maintenance, operation and administration' of the District Court." (Respondents' brief at 12). Alternatively, the State defendants argue that "even if 'mainte-

nance, operation and administration' of the District Court could be interpreted to include court security, § 2–309(r)(8)(iii), which deals specifically with the subject of court security in Prince George's County," is inconsistent with § 1–608(a) and "must control over § 1–608(a) . . . which deals with the District Court generally." (Respondents' brief at 12).

### B.

Initially, we agree with the State defendants and the circuit court that the provision of courtroom and courthouse security for the District Court, when requested by the District Court, is generally a common law duty of the sheriffs' offices throughout the State and is specifically, by statute, a duty of the Sheriff of Prince George's County.

This Court in *Green v. State, supra,* 122 Md. at 296, 89 A. at 610, clearly held that "[i]t was the duty of the sheriff at common law to attend the courts, in person, or by deputy," and that "it has always been regarded as one of the official duties of his office to so attend the sessions of the law courts of the State." *See Soper v. Montgomery County, supra,* 294 Md. at 337, 449 A.2d at 1161 ("providing security for courts" is part of the common law powers and duties of a sheriff). Rather than having been changed by statute, this common law duty, with regard to the Sheriff of Prince George's County, has been expressly codified in § 2–309(r)(8) of the Courts and Judicial Proceedings Article, which states:

"The Sheriff [of Prince George's County] and the Sheriff's deputies shall be limited in their duties as law enforcement officers, as follows:

\*       \*       \*

"(iii) The security of all State and county courts and perform such duties as may be required of them by the courts."

Neither the language of the *Green* opinion nor the above-quoted statute support Prince George's County argument that the Sheriff is simply authorized, but not obliged, to provide security for the District Court. Both the *Green* opinion and

the statute repeatedly employ the words "duty" and "duties." Moreover, nothing in the language of the *Green* opinion or the statute furnishes any basis for excluding the District Court. The statute encompasses the "security of *all* State and county courts" (emphasis added). We perceive no ambiguity in the word "all."

Prince George's County relies upon two opinions by the Attorney General, 57 *Opinions of the Attorney General* 614 (1972), and 60 *Opinions of the Attorney General* 647, 652–653 (1975). In the first opinion the Attorney General seemed to suggest that a sheriff's common law duty to attend the courts did not apply to the "Juvenile Courts of Baltimore City," because other personnel such as "clerks, stenographers, physicians and probation officers" and "court-appointed bailiff[s]" had "been provided to staff the juvenile courts." 57 *Opinions of the Attorney General, supra,* at 620–621.

The second Attorney General's opinion took the position that a sheriff's common law duty to provide security for the courts did not extend to the District Court of Maryland, and that, therefore, the Sheriff of Washington County need not provide security for the District Court of Maryland sitting in Washington County. The Attorney General's reasoning began with the assertion that a sheriff's common law duty to provide security for the courts was limited to courts of record. Therefore, according to the Attorney General, the duty had not extended to the "former justices of the peace and magistrates courts which at common law and under Maryland law were not courts of record. Under the common law the duty to attend the justices and magistrates courts lay with the constable rather than with the sheriff." 60 *Opinions of the Attorney General, supra,* at 652. The Attorney General then appeared to reason that, because the District Court was the successor to the Justices of the Peace and Magistrate Courts, "in the absence of any statutory provision imposing a duty on the sheriff to attend the District Courts, no such obligation exists." *Id.* at 653.

In our view, the position taken by the Attorney General in both of the above-cited opinions is erroneous.

As to the first Opinion, No. 57, the mere fact that other personnel may be provided to assist a court is no reason to relieve a sheriff of the common law duty to provide security if requested by the court. At the time the *Green* case was decided in 1914, there were obviously other personnel provided to assist the courts; this fact, however, did not change the Court's holding in that case. Absent a statutory provision or rule of this Court explicitly abrogating a sheriff's duty to provide security for the courts, the common law duty continues, and the decision whether to use a sheriff's office or personnel of the District Court to provide security is an administrative decision for the court.

The reasoning in Opinion No. 60 is also flawed. Assuming *arguendo* that a sheriff's common law duty to provide security for the courts is limited to courts of record, the District Court of Maryland is a court of record. The fact that the District Court succeeded to the jurisdiction of the Justices of the Peace and Trial Magistrates courts is utterly no reason to treat the District Court like those courts in some other respect. The District Court also succeeded to some of the jurisdiction that was previously exercised by the circuit courts. In reality, the District Court today more closely resembles a circuit court, or in some respects the former statewide General Court, than it resembles a former Justice of the Peace court.

The second Attorney General's Opinion also overlooked constitutional and statutory changes which explain why constables provided security for the former Justice of the Peace courts and why constables today do not provide security for the District Court. Former Article IV, § 42, of the Constitution, entitled "Justices of the Peace," provided for the appointment, removal and terms of Justices of the Peace and constables. Former § 42 expressly provided that "Constables so appointed and commissioned shall be Conservators of the Peace...." This provision gave constables certain police functions. *Mayor, & c. of Baltimore v. State, supra,* 15 Md. at

465–466. Furthermore, former Code (1957, 1966 Repl.Vol.), Article 20, entitled "Constables," contained 24 sections setting forth additional provisions and duties with respect to constables.

Former Article IV, § 42, of the Constitution, and former Article 20 of the Code, were repealed effective July 5, 1971, by the constitutional amendment and implementing legislation establishing the District Court. While the present constitutional provisions, in Article IV, § 41F, authorize the appointment of constables, they do not set forth any duties of constables. Neither the present Constitution nor the statutes designate constables as "conservators of the peace." The statutory provisions setting forth the duties of constables, §§ 2–604, 2–605, and 2–606 of the Courts and Judicial Proceedings Article, quoted earlier in this opinion, all relate to service of process and levy of executions. Although the Chief Judge of the District Court or an administrative judge, pursuant to their broad administrative authority set forth in §§ 1–605 and 1–607 of the Courts and Judicial Proceedings Article, could assign security functions to a qualified constable, the provision of security is no longer a constitutional or statutory duty of constables.

Consequently, even if before 1971 the sheriffs had no common law duty to provide security for Justice of the Peace Courts because constables were legally obliged to provide such security, the present constitutional and statutory scheme is quite different. There are no existing constitutional or statutory provisions which could reasonably be construed to abrogate a sheriff's common law duty to provide security for the courts, including the District Court, when requested by the courts.

### C.

Although we reject Prince George's County's argument that the Prince George's County Sheriff has no duty of providing security for the District Court when requested by the court, we agree with Prince George's County that, under

the applicable statutes, the cost of providing District Court security should ultimately be borne by the State. Consequently, the State is statutorily obliged to reimburse Prince George's County for the cost of providing security for the District Court.

As previously discussed, one of the principal features of the District Court from its inception was that the costs of the court should be borne entirely by the State. This policy is firmly and absolutely embodied in the first clause of § 1–608(a) of the Courts and Judicial Proceedings Article (emphasis added):

> "The cost of maintenance, operation, and administration, and of providing necessary facilities, including capital costs, of the District Court *shall* be borne *exclusively* by the State . . . ."

The cost of providing courtroom security for the District Court, and courthouse security for a District Court building, or for part of a building housing a District Court along with other agencies, is clearly part of the cost of "maintenance, operation, and administration" of, "and of providing necessary facilities" for, the District Court.

Court security is an integral part of the maintenance and operation of a court. Providing a *secure* facility is obviously part of providing a facility for the District Court. Courts have held that the words "maintenance" and "operation" are broad and "involve[ ] those things having to do with carrying on the business for which it is built or established." *People ex rel. Reynolds v. Atchison, T. & S.F. Ry.*, 300 Ill. 415, 417, 133 N.E. 250, 251 (1921). *See, e.g., Shaffer Enterprises v. City of Yuma*, 183 Ariz. 428, 433, 904 P.2d 1252, 1257 (1995); *People v. Clark*, 296 Ill. 46, 53–54, 129 N.E. 583, 587 (1920); *Keck v. Manning*, 313 Ky. 433, 438, 231 S.W.2d 604, 607 (1950) (referring to the "broad terms of 'maintenance' or 'administration' "); *City of Waterville v. Kennebec Water Dist.*, 138 Me. 307, 320, 25 A.2d 475, 480 (1942) (" 'Maintaining' is a word of broad signification"); *In re City of Boston*, 221 Mass. 468, 475, 109 N.E. 389, 392 (1915); *Shadow Isle, Inc. v. Granada*

*Feeding Co.,* 226 Neb. 325, 332, 411 N.W.2d 331, 335 (1987) (" 'costs properly allocated to maintenance of property, include all expenses reasonably necessary to its sustention' "); *State v. Murrow,* 199 Wash. 685, 692, 93 P.2d 304, 307 (1939) ("We find the word 'maintenance' to have a broad meaning"); *Town of Romney v. Romney Improvement Co.,* 122 W.Va. 608, 609, 11 S.E.2d 758, 758–759 (1940) ("costs properly allocated to maintenance of property, include all expenses reasonably necessary to its sustention. Operation and maintenance cover the same expenditures"). *See also Willie v. American Casualty Company,* 547 So.2d 1075, 1084 (La.App.1989) (referring to evidence in the case before the court showing "that a standard industry practice was to include security costs as a 'common area maintenance' cost, which is assumed by the management of a shopping center and passed on to the individual merchants through the provisions of their respective leases").

The State defendants assert that providing security for the District Court is not a cost of maintaining or operating the court because it is a "law enforcement" function. That there is a "law enforcement" aspect to the provision of security in no way detracts from security being part of the costs of the District Court. There is also a law enforcement function associated with a guard hired by a bank and stationed at the door or in the lobby of a bank building, or a night watchman for a warehouse, or security guards and off-duty policemen hired by a shopping center to provide security. The costs of providing security to any enterprise, where security is deemed reasonably necessary or appropriate, is part of the "cost of maintenance, operation, and administration" of the enterprise. It borders upon the frivolous to argue otherwise.

As mentioned before, the State defendants alternatively contend that, if the cost of maintenance, operation and administration of the District Court includes security, § 2–309(r)(8) of the Courts and Judicial Proceedings Article creates an exception for Prince George's County and requires that the County bear the cost when the Sheriff's Office provides security to the District Court. Section 2–309(r)(8), however, simply lists the duties of the Prince George's County Sheriff. The

subsection has nothing to do with whether the County or the State should ultimately bear the expense of the Sheriff's performance of a particular duty. In fact, when the subsection is viewed in its entirety, it appears that the principal purpose of subsection (8) was simply to restrict the law enforcement duties of the Prince George's County Sheriff.[1]

As shown by the language of the first clause of § 1–608(a) of the Courts and Judicial Proceedings Article, which is identical to the original language adopted by the General Assembly in

---

**1.** Subsection (8) of § 2–309(r) provides in its entirety as follows:

"(8) The Sheriff and the Sheriff's deputies shall be limited in their duties as law enforcement officers, as follows:

(i) The full power of arrest, the service of process of all writs, summonses, orders, petitions, subpoenas, warrants, rules to show cause, and all other legal papers;

(ii) The care and supervision of prisoners at any of the county detention centers, hospitals, penal institutions, or other places of confinement;

(iii) The security of all State and county courts and perform such duties as may be required of them by the courts;

(iv) The transportation of all legally detained persons;

(v) The administration and enforcement of casino night permits as authorized by the governing body of the county; and

(vi) Neither the Sheriff of Prince George's County nor any of the Sheriff's deputies shall conduct criminal investigations, except in matters concerning the Sheriff's department or upon request of the courts, or as necessary for the administration and enforcement of casino night permits as authorized by the county governing body."

Furthermore, the legislative history of § 2–309(r)(8) does not support the State defendants' argument. Prior to 1971, § 70–3 of the Code of Public Local Laws of Prince George's County, being Article 17 of the Code of Public Local Laws of Maryland, provided that the Sheriff of Prince George's County, when requested by the Orphans' Court of Prince George's County, "shall attend upon" the Orphans' Court. The section also required the Sheriff to serve process directed to him, and it provided for the Sheriff's removal upon conviction of misfeasance. The section made no reference to costs or expenses. By Ch. 307 of the Acts of 1971, the section was repealed, and a new section 70–3 was enacted. The new section was essentially the same as present § 2–309(r)(8). The title to Ch. 307 of the Acts of 1971 made no mention of costs or expenses. It merely stated that the Act "relat[ed] to the duties of the Sheriff of Prince George's County." By Ch. 250 of the Acts of 1975, the provision was reenacted, without substantial change, as part of the Courts and Judicial Proceedings Article, and was combined with other statutory provisions relating to the Sheriff of Prince George's County to constitute § 2–309(r) of the Courts and Judicial Proceedings Article.

1970, the policy that the State "exclusively" bear the entire cost of the District Court is strong and contemplates no exceptions. If a particular cost is encompassed within § 1-608(a), the State, and not a subdivision, should ultimately bear the cost. In light of the strong and consistent public policy embodied in § 1-608(a), another statute should not be construed to create an exception to § 1-608(a) unless it expressly deals with costs associated with the District Court and clearly creates an exception to § 1-608(a). Section 2-609(r)(8), relating to the Prince George's County Sheriff's duties, but not costs or expenses, does not create an exception to § 1-608(a).

Consequently, those portions of the circuit court's declaratory judgment which indicate that the County should ultimately provide funding for District Court security performed by the Sheriff and which "determines" that § 1-608(a) of the Courts and Judicial Proceedings Article "do[es] not include security" are erroneous. Similarly, that portion of paragraph one of the circuit court's order, relating to security, is erroneous.

The County's third-party complaint, with regard to security, sought both a declaratory judgment and an "injunction" requiring the State defendants ultimately to bear the costs of providing District Court security in Prince George's County and "reimburs[ing] the County for the costs of those services already provided from 1971 to present." In this Court, however, the parties have not briefed and argued the matter of the appropriate remedy or remedies in the event that we decide, as we have, that the State should ultimately bear the costs of District Court security in Prince George's County. Moreover, we do not know whether there are appropriations in the current District Court budget or in the budget for fiscal year 2000 which are available and lawfully could be used for this purpose. Whether Code (1984, 1995 Repl.Vol., 1998 Supp.), § 12-201 *et seq.* of the State Government Article, relating to contract actions against the State, has any bearing on the remedy is a matter which may have to be considered. We do note that under Article III, § 52(11), of the Constitution, it is the Chief Judge of the Court of Appeals who certifies to the Governor, for transmission to the General Assembly,

the annual budget requests for the judiciary, and the Chief Judge of the Court of Appeals has never been made a party to this litigation.

It would be desirable if, upon the filing of this opinion, or upon the filing of a modified declaratory judgment by the circuit court, the parties, with the assistance of the Attorney General and the County Attorney for Prince George's County, could negotiate a satisfactory reimbursement arrangement with regard to District Court security costs in Prince George's County. If not, the appropriate remedy or remedies will have to be determined after further circuit court proceedings.

## IV.

Prince George's County argues that, under the statutory provisions relating to the District Court, "constables are the primary means of process service" and that sheriffs' offices are to be used to serve District Court process only " 'during exigent and limited circumstances.' " (Petitioner's reply brief at 5). The County further contends that, to the extent that the District Court utilizes a sheriff's office to serve process, the cost must ultimately be borne by the State pursuant to § 1–608(a) of the Courts and Judicial Proceedings Article, and that, therefore, the State should reimburse Prince George's County for the Sheriff's expenses in serving District Court process. Finally, the County maintains that every District Court location or division must have at least one constable.

## A.

The serving of process directed to a sheriff is clearly one of the common law and statutory duties of a sheriff. *Rucker v. Harford County, supra,* 316 Md. at 287, 558 A.2d at 405; *Soper v. Montgomery County, supra,* 294 Md. at 337, 449 A.2d at 1161, and cases there cited; *Scott v. State,* 1 Md.App. 481, 486–487, 231 A.2d 728, 732 (1967) (It is a common law and statutory duty "that the sheriff 'shall serve and return all writs and process directed to him according to the command contained therein' "); §§ 2–301 through 2–305 of the Courts

and Judicial Proceedings Article. Section 2–309(r)(8)(i) of the Courts and Judicial Proceedings Article expressly lists among the "duties" of the Prince George's County Sheriff "the service of process of all writs, summonses, orders, petitions, subpoenas, warrants, rules to show cause, and all other legal papers. . . ."

It is true, as suggested by Prince George's County, that the detailed statutory provisions concerning service of process by constables that were first enacted in 1970 and 1971, and are now codified as §§ 2–604, 2–605, and 2–606 of the Courts and Judicial Proceedings Article, reflect the legislative contemplation in 1970 and 1971 that service of District Court process would primarily be the responsibility of District Court constables paid by the State. *See* Ch. 528 of the Acts of 1970, *Laws of Maryland 1970*, at 1263–1264.

Nevertheless, the provisions concerning constables in the District Court implementing legislation did not originally, and do not today, abrogate the duty of sheriffs to serve District Court process directed to them. On the contrary, those provisions from their initial enactment by Ch. 528 of the Acts of 1970 through the present have left it to the District Court to decide whether, and to what extent, process shall be served by sheriffs' offices or constables. Section 2–605(a) of the Court and Judicial Proceedings Article, after providing for the service of civil process by constables, states: "except that the administrative judge of a particular district may order the papers and process served by the sheriff of the county." Similarly, § 2–605(b) authorizes criminal and traffic process to be served by constables "or by the sheriffs of the respective counties or by State or local police as the administrative judge of the district shall direct."

Consequently, it was entirely within their statutory discretion for the Chief Judge of the District Court and the Administrative Judge for District 5 to decide that the Prince George's County Sheriff's Office would serve District Court process in Prince George's County and that no process would be served by District Court constables.

### B.

■■■ Unlike the cost of security, we do not believe that a sheriff's expense in serving District Court process is part of the "cost of maintenance, operation, and administration" of the District Court which should ultimately be borne by the State pursuant to § 1–608(a) of the Courts and Judicial Proceedings Article.

Since a constable is a District Court employee, his salary and authorized expenses while working are obviously part of the District Court's costs, whatever duties may be assigned to the constable by an administrative judge. Nevertheless, even when a constable serves process, a fee is paid by the litigant for this service. When process is served by a person other than a District Court employee, the costs are part of the expenses of litigation rather than part of the expenses of maintaining, operating, or administering the District Court. Service of process is an expense of the litigant just like an attorney's fee, expert witness fee, or other expenses which the litigant must bear. This is why a statutorily prescribed "fee" is charged by a sheriff for the service, and the sheriff's fee is paid to the county.[2] In theory, the fees paid by a litigant to a sheriff for serving process are intended to cover the sheriff's expenses in performing this function. Where they do so, there is no net governmental expense.

District Court process may, of course, be served by a "competent private person" pursuant to Maryland Rule 3–123(a). If service of process constituted a cost of operating the District Court, rather than an expense of a litigant, literally under § 1–608(a) of the Courts and Judicial Proceedings Article the State would have to pay for the costs of private process servers or local police departments as well as sheriffs' offices. This would be an unreasonable construction of § 1–608(a).

---

**2.** *See,* the schedule of fees which follow Code (1974, 1998 Repl.Vol.), § 7–301 of the Courts and Judicial Proceedings Article.

■    Accordingly, to the extent that the Sheriff's expenses in serving process exceed the fees received by Prince George's County for this service, the costs must be borne by Prince George's County. The State is not obligated under § 1–608(a) to reimburse the County for the difference.

### C.

Prince George's County contends that § 2–604(a) of the Courts and Judicial Proceedings Article requires that there be one constable assigned to every District Court location. Section 2–604(a) states:

" § 2–604.  **Constables.**

(a) *Appointment; assignment to courts.*—The Chief Judge of the District Court, upon the recommendation of the administrative judge of each district, shall appoint the number of constables required to serve process of the District Court within that district. The administrative judge shall assign the constables to the various courts or divisions of courts within his district so that every court or division of a court has at least one constable."

If this asserted statutory duty were complied with, at least there would be one constable at each location available to serve process. Prince George's County seeks a writ of mandamus to require the Chief Judge of the District Court to appoint at least one constable for each District Court location in the County.

The State defendants, however, argue that the "second sentence of the subsection [2–604(a) ] must be read with the first. When no constables are appointed in a district because none are needed, there is no need to distribute them in a manner to assign at least one constable to every court or division in the district." (Respondents' brief at 20–21). The State defendants maintain that, since the District Court may utilize sheriffs in each location in lieu of constables, when the Court does so constables need not be designated for the location. The County replies that the State defendants' construction of § 2–604(a) "clearly renders superfluous the statu-

tory requirement that constables be assigned 'so that every court or division of a court has at least one constable.' " (Petitioner's reply brief at 5).

The initial District Court implementation legislation as proposed by the Governor expressly embodied the construction of § 2-604(a) advocated by the State defendants. The General Assembly, however, amended the provision to its present form, thereby supporting the construction now urged by Prince George's County. Ch. 528 of the Acts of 1970 added to the Code what is now § 2-604(a), stating (*Laws of Maryland 1970,* at 1263–1264):

"(a) Upon the recommendation of the administrative judge of each district, the Chief Judge of the District Court shall ~~appoint~~ DESIGNATE for each district a number of ~~sheriffs or~~ constables as required to serve civil process of the District Court within that district. The ~~appointing~~ DESIGNATING judge shall assign the ~~sheriffs or~~ constables to the various courts or divisions of courts within his district so that every court or division of a court has at least one ~~sheriff or~~ constable. The ~~sheriffs or~~ constables shall be paid the compensation provided by law and shall continue in office at the pleasure of the chief judge of the District Court."

While the wording has been changed slightly since 1970, the substance of the above-quoted provision has remained the same.

If we were to accept the State defendants' construction of § 2-604(a), it would render nugatory the changes made to the provision by the General Assembly in 1970 and continued to the present. The General Assembly clearly rejected the proposal that there be at least one deputy sheriff or one constable at each location. Instead, the Legislature required that there be at least one constable at each court. The Legislature explicitly deleted the option of a sheriff in place of the one constable minimally required. The legislative history discloses that the second sentence of § 2-604(a) means precisely what it says.

■ Upon remand, the circuit court's declaratory judgment should be modified to reflect the statutory requirement set forth in the second sentence of § 2–604(a). Until changed by statute or by an administrative rule promulgated by the Court of Appeals, the present statutory scheme contemplates at least one constable for each District Court location.

■ Nonetheless, Prince. George's County is not entitled to a writ of mandamus requiring Chief Judge Rasin to appoint one constable for each District Court location in Prince George's County. As Judge Alvey stated concerning the issuance of a writ of mandamus in *George's Creek Coal & Iron Co. v. County Comm'rs of Allegany Co.*, 59 Md. 255, 259 (1883), "[t]he process is extraordinary, and if the right be doubtful, or the duty discretionary, or of a nature to require the exercise of judgment, . . . this writ will not be granted." The writ of mandamus will not be granted unless the " 'duty which the respondent refuses to perform is purely ministerial,' " *Bovey v. Exec. Dir., Health Claims*, 292 Md. 640, 644, 441 A.2d 333, 336 (1982), quoting *Brown v. Bragunier*, 79 Md. 234, 235–236, 29 A. 7, 8 (1894). *See, e.g., Gisriel v. Ocean City Elections Board*, 345 Md. 477, 496–497, 693 A.2d 757, 767 (1997), *cert denied*, —— U.S. ——, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998); *Goodwich v. Nolan*, 343 Md. 130, 145–148, 680 A.2d 1040, 1047–1049 (1996); *Board v. Secretary of Personnel*, 317 Md. 34, 46–47, 562 A.2d 700, 706 (1989); *Md. Act. for Foster Child. v. State*, 279 Md. 133, 138–139, 367 A.2d 491, 494 (1977).

The appointment of officials such as constables by the Chief Judge of the District Court is not a purely ministerial function. It involves the exercise of judgment with respect to qualifications, salary, the soliciting and review of applications for the position, etc. Moreover, there is no money specifically appropriated in the District Court's budget for constables in any place but Baltimore County and Washington County, and there may not be funds otherwise available which could be lawfully used for this purpose. Unlike the county commissioners involved in *County Com'rs of Worcester County v. Melvin*,

89 Md. 37, 42 A. 910 (1899), who were required by law to levy sums to pay for certain services, and where the Court indicated that mandamus would lie to require levy and payment, the Chief Judge of the District Court is not authorized to raise money for employees' salaries when there is no appropriation for such purpose. *See Wailes v. Smith,* 76 Md. 469, 477, 480, 25 A. 922, 923–924 (1893) ("[W]here a specific sum of money is appropriated by law for the payment of certain defined services rendered the State, . . . the payment for such services by the proper officer may be enforced by *mandamus.*" But where there was a question whether sums were appropriated for the purpose, "it cannot be said that the duty of the Comptroller in the premises was an absolute and imperative duty, and therefore ministerial"). *See also Madison v. Harbor Board of Baltimore City,* 76 Md. 395, 25 A. 337 (1892) (mandamus will not lie to compel the issuance of a public contract to the lowest bidder, pursuant to a statute stating that the contract should be awarded to the lowest bidder, because the letting of public contracts involves a degree of official discretion); *National Treasury Employees Union v. Bush,* 715 F.Supp. 405, 407–408 (D.D.C.1989) (mandamus will not lie to compel the President to fill a vacancy on a federal agency).

Although Prince George's County's construction of § 2–604(a) appears to be correct, the County was not entitled to the requested writ of mandamus compelling the appointment of constables.

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED IN PART AND AFFIRMED IN PART, AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. TWO–THIRDS OF THE COSTS TO BE PAID BY THE STATE OF MARYLAND AND ONE–THIRD OF THE COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.*